CITY OF STAFFORD, Appellant,

v.

Anthony R. GULLO, Trustee, and Fred
E. Haas, Trustee, Appellees.

No. 01–94–00462–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 20, 1994.

John J. Hightower, Houston, for appellant.

Paul J. McConnell, III, Stephen C. Reid,
III, Ben A. Baring, Jr., Houston, for appel-
lees.

Before WILSON, HEDGES and COHEN,
JJ.

## OPINION

COHEN, Justice.

This case is on appeal from cross motions
for summary judgment. We affirm.

On December 10, 1980, Gullo and Haas
acquired six acres in Stafford. They sold 4.6
acres of that tract to Wal–Mart Stores, Inc.
in 1991. City ordinances forbid the subdivi-
sion of land unless a subdivision plat has
been approved by the city planning commis-
sion. STAFFORD, TEX.CODE OF ORDINANCES,
art. V, ch. 17, § 90 (also known as ordinance
360). The commission may not issue permits
to improve subdivided lands unless a plat has
been approved. *Id.* The term "subdivision"
is defined in the ordinance as the division of
any tract "by plat, map or description into
two or more parts ... for the purpose ... of
sale...." The parties agree that the sale to
Wal–Mart was a "subdivision" covered by the
ordinance. Accordingly, the City sued Gullo
and Haas requesting injunctive relief, a de-
claratory judgment, and $1,000 per day in
civil penalties.

Gullo and Haas then submitted plats to the
City. The City conditionally approved the
plat, provided that Gullo and Haas dedicate
additional right of way to the City and pay
some costs of widening an adjacent street.
Gullo and Haas refused to dedicate the right
of way or to provide a bond for the road
construction.

In their motion for summary judgment,
Gullo and Haas contended that Ordinance
360 did not authorize the City to require
dedication of their land for right-of-way or
for them to pay construction costs. We
agree.

A municipality may require dedications of
land only if that is authorized by constitution-
al, statutory, or charter authority. Cities
may adopt regulations relating to plats and
subdivisions of land. TEX.LOCAL GOV'T CODE
ANN. § 212.002 (Vernon 1988). Although the
City has enacted Ordinance 360, we find that
its provisions do not authorize the relief the
City seeks. We will consider individually the
provisions the City relies on.

## Section 17–144

The City relies on section 17–144(b) which provides:

> The minimum width of the right-of-way to be dedicated for any designated major thoroughfare shall not be less than 100 feet. In those instances where the proposed subdivision is located adjacent to an existing major thoroughfare having a right-of-way less than 100 feet, sufficient additional right-of-way must be dedicated to accommodate the development of the major thoroughfare in question on the basis of a total right-of-way width of 100 feet. Where the construction of concrete pavement with curbs, gutters and storm sewers is determined by the planning commission and the council to be not feasible and open-ditch drainage is therefore required, the minimum right-of-way width required for the development of a designated major thoroughfare shall be more than 100 feet and of sufficient width to accommodate the approved roadway pavement and attendant drainage facilities.

We first observe that the third sentence of subdivision (b) does *not* apply to this case. That sentence applies only when the planning commission and the council have determined that construction of concrete pavement with curbs, gutters and storm sewers is not feasible and open-ditch drainage is required. No such determination has been made. The undisputed summary judgment evidence is that the adjacent street has concrete pavement with curbs, gutters and storm sewers, and, significantly, that the adjacent street already has a 100 foot right-of-way.

The first sentence quoted above, if considered alone, might authorize a right-of-way of more than the presently existing 100 feet.[1] It provides, at least in some circumstances, for a "minimum width" of not less than 100 feet. That provision is limited, however, by the next sentence, which provides that when, as here, the proposed subdivision is adjacent to an existing major thoroughfare having a right-of-way less than 100 feet, then additional right-of-way must be dedicated to allow development of the thoroughfare "on the basis of a total right-of-way width of 100 feet."

This sentence covers this case. The "proposed subdivision" here is the land still owned by Gullo and Haas. That land is not located adjacent to an existing major thoroughfare with a right-of-way less than 100 feet; the undisputed summary judgment evidence is that the existing major thoroughfare has, already, a right-of-way of 100 feet. Therefore, the second sentence of section 17–144(b) does not allow the City to take a right-of-way exceeding 100 feet. We conclude that nothing in section 17–144(b) allows the City to force these landowners to grant a right-of-way greater than 100 feet in width when the proposed subdivision is adjacent to an existing major thoroughfare that already has a right-of-way 100 feet wide.

## Sections 17–143 and 17–90(b)

Section 17–143 of the ordinance is not applicable. It applies to "the public street system pattern proposed *within* any subdivision...." (emphasis added). West Airport Boulevard, the subject of this lawsuit, is not within the appellees' subdivision.

The City's reliance on section 17–90(b) is also misplaced. That section generally provides that a developer shall pay for all improvements which, in the judgment of the City Engineer, are necessary to provide adequate streets to the subdivision and surrounding areas. This section, if read in isolation, might authorize the City to require a right-of-way of more than 100 feet. It does not do so, however, when read together with section 17–144(b). The second sentence of section 17–144(b) is a limitation on the amount of right-of-way that can be required when the proposed subdivision is adjacent to an existing major thoroughfare. It is a specific provision of the ordinance that controls more general provisions of section 17–90(b).

The same is true of section 17–189, which provides that no final plat shall be authorized until the developer files a surety bond in an amount equal to the cost of installing all required improvements, as determined by the City Engineer. This too is a general provision that is limited by the second sentence of section 17–144(b).

---

1. We express no opinion on that issue.

Because the summary judgment order does not state the ground on which it was granted, it will be upheld if it is supported by any ground in the appellees' motion. We conclude that it is supported on the ground that the City was not authorized by its own ordinance to require Gullo and Haas to donate land for a right-of-way in excess of 100 feet.

Points of error one and two are overruled.

At oral argument, the City waived point of error four, contending that its motion for summary judgment was meritorious. In light of our holding, we need not reach point of error three.

The judgment is affirmed.