Jerry SMITH and Brenda Smith *v.* Marilyn HANSEN,
Lynne Rice, Jeffrey Scott Metcalf, Chris Young, Southern
Guaranty Insurance Company, and Continental Casualty
Company

95-315                                            914 S.W.2d 285

Supreme Court of Arkansas
Opinion delivered January 22, 1996
[Petition for Rehearing denied March 4, 1996.]

190

*R. David Lewis*, for appellants.

*Mays & Crutcher, P.A.*, and *Wallace, Hamner & Adams*, by: *Michael A. Leboeuf* and *Dale Adams*, for appellees and cross-appellants Hansen and Rice.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, by: *Michael L. Alexander* and *Christopher Gomlicker*, for appellee Southern Guaranty Insurance Company.

*Wright, Lindsey & Jennings*, by: *Sammye L. Taylor* and *Judy M. Robinson*, for appellee Continental Casualty Company.

ROBERT L. BROWN, Justice. Appellants Jerry Smith and

Brenda Smith, his wife, appeal on several bases but primarily from an order dismissing their negligence claim against the appellees Marilyn Hansen and Lynne Rice and from a remittitur order reducing their verdict for compensatory damages against Hansen and Rice from $250,000 to $100,000. Hansen and Rice, as appellees, assert as a cross-appeal the same point urged by the Smiths — that it was error for the trial court to dismiss the Smiths' negligence claim. In addition, they argue on cross-appeal that the trial court erred in not granting them a new trial and in allowing the outrage claim and the issue of punitive damages to go to the jury. We affirm the trial court's dismissal of the negligence claim and its rulings on the other matters at issue, but we reverse the order of remittitur.

The facts of this case arise out of an allegation by the Smiths that Hansen and Rice contracted with appellees Jeffery Scott Metcalf and Chris Young to rob and beat the Smiths. According to the testimony at trial, Jerry Smith once worked for Hansen and Rice as a salesman of medical supplies at their business known as Electronic Finders Incorporated ("EFI") in Little Rock. In order to enhance his income, Smith decided to leave EFI and set up his own medical supply firm called Sources Inc. EFI sued Smith for violation of a non-compete agreement in September 1991, and the case was settled in April 1992.

During the early morning hours of July 3, 1992, Jerry Smith was awakened in his bedroom by a flashlight in his face. He was struck four or five times by the flashlight. He fell out of bed, and the intruder placed the barrel of a pistol behind his right ear and threatened to "blow [Smith's] head off" if Smith looked at him or tried anything. The intruder accused Smith of sleeping with the intruder's sister which Smith denied, and he then accused Smith of cheating on Smith's business partner. He added that the business partner told him to collect $500 from Smith.

The intruder next changed his story and told Smith that the business partner offered him $500 to hurt Smith. He added that he was going to meet Smith's business partner that day, but Smith knew this to be a lie because his partner was in the hospital for bypass surgery. His wife, Brenda, was grabbed around the neck and hit two or three times. She was threatened with

rape and became hysterical. The intruder asked where the guns and jewelry were located, but determined that there were no guns. He apparently decided against taking the jewelry.

A second intruder was present for part of the beating, and he assisted in tying up Smith and his wife. Smith suffers from a degenerative disc disease, and the first intruder said that he knew Smith had a bad back. He then kicked Smith in the small of his back. The first intruder repeatedly asked for more money and eventually took approximately $250 from the Smiths and Jerry Smith's pickup truck as well. The truck was later recovered in Boyle Park in Little Rock. As a result of the incident, the Smiths have had difficulty sleeping and have sought counseling.

Following the attack, Jerry Smith told investigators from the Little Rock Police Department about Hansen's and Rice's dislike for him. After being contacted, Hansen and Rice cooperated with the police and led them to appellees Young and Metcalf. Young and Metcalf were subsequently arrested and prosecuted for robbery. Metcalf pled guilty and received probation. At the ensuing criminal trial for Young, the Smiths and Metcalf testified, as did Hansen and Rice under promise of immunity. The trial court dismissed the charges against Young due to lack of evidence corroborating the testimony of co-conspirators. On appeal by the State, this court declared that the trial court erred in dismissing the charges. *See State* v. *Young*, 315 Ark. 656, 869 S.W.2d 691 (1994).

On June 29, 1993, the Smiths filed this lawsuit and alleged assault and battery against Hansen, Rice, Young, and Metcalf. The complaint was later amended to include the tort of outrage and negligence. In their second amended complaint, the Smiths sought a declaratory judgment against appellees Southern Guaranty Insurance Company and Continental Casualty Company, both of which insured Hansen and Rice for acts of negligence related to their business. The declaratory judgment was for the purpose of determining whether the acts complained of comprised negligence. Prior to trial, counsel for Hansen and Rice moved to dismiss the Smiths' negligence claim, and the trial court granted the motion.

At trial, Scott Metcalf testified that he grew up with Chris Young and that the two men visited the EFI offices on occasion

to see Young's sister, Rosalyn Lemons, who worked for Hansen and Rice. Metcalf stated that Hansen and Rice hired Young and him for $60 each to move their business furniture to a different location. They also hired the two men to follow an employee, Charles George, to determine whether he was doing business with a competitor. Metcalf further testified that Hansen and Rice "wanted something done" to Jerry Smith. He stated that Rice wanted Smith to have his arm or leg broken and that Hansen wanted damage done to Smith's vehicles by slashing the tires or breaking the windows. Rice, he said, did most of the talking when they discussed the matter. They were told that Smith had a bad back. Metcalf and Young agreed to do what the women wanted for $2,000. Rice then gave them Smith's address.

Metcalf described to the jury how Young and he broke into the Smith residence through an open window. He stated that Young went through Brenda Smith's purse and that he tied up the Smiths on Young's instructions. He added that though he was not present when it happened, it looked like Young had beaten Smith with the flashlight. The two men took Smith's truck and abandoned it at Boyle Park. A few days later, Young and Metcalf met Hansen and Rice at a Wal-Mart store in Little Rock and received $50, according to Metcalf. A week after that, Young received another $100 from the two women. A meeting was set up at Denny's restaurant where the two men expected to receive the balance of the $2,000 owed to them. When Hansen and Rice went to supposedly retrieve the money from the trunk of their car, Young and Metcalf were arrested by undercover police. Metcalf stated that he agreed to the contract beating because he was financially strapped, and he denied that there was any misunderstanding about what Hansen and Rice wanted done to Smith.

Rosalyn Lemons testified that she worked for Hansen and Rice for two years as a receptionist and that the two women wanted to get even with Smith for going into competition against them. Lemons testified that she heard Rice say in front of Hansen "just one karate chop to the back would do it." Lemons also remembered that Rice asked Young whether he would hurt someone for money.

Lynne Rice admitted at trial that she had given Smith's for-

mer address to Young but stated that Young told her about the beating and robbery after the fact and then demanded money. Marilyn Hansen told the jury that she did not like Smith and wanted his vehicle damaged, but she denied that she offered anyone payment to do this. She admitted that Smith's competition was hurting EFI, and that EFI ultimately went bankrupt. She met Young at Wal-Mart after the beating and robbery, saw Smith's drivers license in Young's possession, and gave Young $100 to get his car fixed. She testified that she offered the money as a prepayment for help in moving office furniture during the upcoming week. She further testified that she told the two men at the meeting at Wal-Mart that there had been a big misunderstanding. Afterwards, she sought legal advice which resulted in her cooperation with the police.

Chris Young testified that he had previously been convicted of theft of property and theft by receiving and had served time in prison. His probation was revoked because of the Smith beating, but the criminal charges were dismissed against him, as has been already discussed. He stated that Hansen and Rice, who knew he had a record, hired the two men to move their offices and follow Charles George. He further testified that Rice "wanted Smith slowed down physically." At trial, he denied giving the women a definite price to do the beating and denied actually participating in it. This testimony contradicted his deposition in which he testified that Rice promised him $2,000 for the job. That deposition was used to impeach Young's testimony at trial. He admitted that he was told that a karate chop to Smith's back "would be a good idea."

The jury found that Hansen and Rice through their agents committed battery and outrage against the Smiths and awarded each of them $250,000 in compensatory damages and $500,000 in punitive damages against Rice and against Hansen, for a total award of $3,000,000. The jury further awarded each of the Smiths $25,000 in compensatory damages and $50,000 in punitive damages against Young and $1 in compensatory damages and $1 in punitive damages each against Metcalf. On motion by Hansen and Rice for remittitur, the trial court reduced each compensatory award from $250,000 to $100,000. Following the trial, the trial court also granted summary judgment in favor of Southern Guaranty and Continental Casualty on the basis that

the jury found that Hansen and Rice acted intentionally and intentional conduct was expressly excluded from coverage.

The Smiths now appeal and primarily urge that the dismissal of the negligence claim and the order of remittitur were error. We note that Hansen and Rice filed the first notice of appeal and the Smiths filed a notice of cross-appeal, which was timely and appropriate. The Smiths, however, lodged the record and assumed the role of primary appellants while Hansen and Rice filed briefs styled as appellees and then raised new issues as cross-appellants. Though this role reversal is highly unusual, we observe no prejudice to the parties, and we will address the points raised on the merits.

## I. Dismissal of the Negligence Claim

The Smiths mount three arguments in their appeal, all of which can be subsumed under the heading of "negligence" because they deal with dismissal of the negligence claim, refusal to instruct the jury on negligence, and summary judgment in favor of the insurance companies. Hansen and Rice successfully moved to dismiss the negligence claim before the trial court, but now also contend that the dismissal was error by the trial court. This, of course, they cannot do. They prevailed below and are bound by the trial court's decision in their favor. *See Walker* v. *Kazi*, 316 Ark. 616, 875 S.W.2d 47 (1994). We will not consider their arguments on this point on appeal.

Appellees Southern Guaranty and Continental Casualty urge that the dismissal of the negligence claim was appropriate because Hansen and Rice owed no legal duty to the Smiths and further that the trial court did not err in granting summary judgment in their favor. The critical factor underlying the parties' positions is that the insurance policies will cover damages resulting from negligence of Hansen and Rice where that is not the case for intentional torts.

The trial court dismissed the negligence claim but in doing so considered matters outside of the pleadings, including depositions of the parties, which converted the motion into one for summary judgment. *See* Ark. R. Civ. P. 12(b); *First Commercial Trust Co.* v. *Lorcin Eng'g, Inc.*, 321 Ark. 210, 900 S.W.2d 202 (1995). With that in mind, we turn to the central

issue which is whether Hansen and Rice owed a duty of care to the Smiths. If no duty of care is owed, the negligence count is decided as a matter of law, and summary judgment is appropriate. *See First Commercial Trust Co. v. Lorcin, supra.*

We have held that ordinarily one is not liable for the acts of another party unless a special relationship exists between the tortfeasor and the victim — in this case, between Hansen and Rice on the one hand and the Smiths on the other. *First Commercial Trust Co. v. Lorcin, supra; Bartley v. Sweetser,* 319 Ark. 117, 890 S.W.2d 250 (1994); *Keck v. American Employment Agency, Inc.,* 279 Ark. 294, 652 S.W.2d 2 (1983). Moreover, in our analysis we further examine whether a special relationship exists between the actor (Hansen and Rice) and the third party (Metcalf and Young) which imposes a duty on the part of the actor to control the third party's conduct. *Id.* This is in accordance with the Restatement of Torts which reads:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Restatement (Second) of Torts § 315 (1965).

The Smiths and Hansen and Rice fervently maintain that a claim for negligence is present under these facts. The essence of their argument is that Hansen and Rice negligently proclaimed their desire to see Jerry Smith hurt and his property damaged in the presence of a convicted felon, Chris Young, who took their statements seriously and acted on them. Young, according to the negligence theory, perpetrated the crime against the Smiths with Metcalf's help, but absent any agreement with Hansen and Rice or clear direction from them to injure Jerry Smith.

We must disagree that a *bona fide* claim of negligence exists. Clearly, no special relationship existed between Hansen and Rice and the Smiths at the time of the beating. The question

then becomes whether a special relationship giving rise to a duty to control existed at that time between Hansen and Rice and the two perpetrators of the crime. We fail to see that it did, excluding as we must the contract to beat Smith for $2,000 from our analysis. That leaves only an agreement between the parties to move furniture and a vague mission to follow an EFI employee named Charles George. There is nothing to suggest that Metcalf and Young were employees, agents, or otherwise subject to the control or guidance of Hansen and Rice.

This is markedly different from the case of *Keck* v. *American Employment Agency, Inc., supra.* In *Keck*, the employment agency sent a customer, Stacey Keck, to interview with a prospective employer, Joiner, who raped her. In that case, we based our decision in part on the degree of control the agency had over Joiner, which could have been exercised by the agency's making further checks on him. In the instant case, there was no comparable or analogous business relationship between Hansen and Rice and the Smiths which involved Metcalf and Young. We conclude that no such relationship existed among the parties under these facts.

Nor do we view this as a matter where Hansen and Rice induced or encouraged tortious behavior by Metcalf and Young against the Smiths, as we held to be the case in *Cobb* v. *Indian Springs, Inc.*, 258 Ark. 9, 522 S.W.2d 383 (1975). *See also* Restatement (Second) Torts § 876 (1979). In *Cobb*, a security guard for an Indian Springs mobile home park asked a 16-year-old to demonstrate the speed of his car through the park which resulted in injury to a young girl who was hit by the car. We held that a jury question was presented in the case and observed that the security guard was in a position of authority and was held in respect by the young people of the park, which could have influenced and encouraged the teenager to demonstrate the speed of the car. We view that consideration as analogous to the tortfeasor's having some control over the third party who causes the injury and, again, to be a factor which is absent in the case before us. Nor do we view the testimony of Hansen and Rice, if you eliminate the contract, as constituting an inducement or encouragement to beat the Smiths, or even a suggestion that they do so.

■ In short, we agree with the trial court that this case presented a cause of action of intentional tort premised on a contract to beat but not a cause of action for negligence. Without the existence of some special relationship, or evidence of encouragement to third parties by one in a position of some control or authority over them, no duty of care flowed from Hansen and Rice to the Smiths. Offhand statements of dislike to a third party cannot constitute negligence in the absence of such a relationship. We hold that the trial court appropriately granted summary judgment on this issue.

## II. Outrage

For their second point, the Smiths assert that the trial court erred in refusing to modify the outrage instruction, AMI 404. Specifically, they urge that extreme mental anguish beyond what a reasonable person is expected to endure as set out in AMI 404 is an impossible standard to meet.

■ The Smiths have no standing to make this argument. The trial court instructed the jury on the tort of outrage using AMI 404, and the jury returned a verdict in favor of the Smiths on this claim. As the prevailing party, the Smiths cannot now contend that AMI 404 should have been given in modified form. *See Walker* v. *Kazi, supra; Bynum* v. *Savage,* 312 Ark. 137, 847 S.W.2d 705 (1993). This point is meritless.

## III. Remittitur

■■ We turn next to the Smiths' argument that the trial court erred in reducing the verdict awards from $250,000 to $100,000. We have held that a trial court may not substitute its judgment for the jury's when there is a basis in the evidence for the award and when there is no evidence, appropriately objected to, which tends to create passion or prejudice. *McNair* v. *McNair,* 316 Ark. 299, 870 S.W.2d 756 (1994); *Morrison* v. *Lowe,* 274 Ark. 358, 625 S.W.2d 452 (1981). We review the issue of remittitur *de novo* and determine whether the amount of the judgment shocks the conscience of this court. *Id.*

■ In this case, the trial court made no finding that the jury award was the result of passion or prejudice (*see* Ark. Code Ann. § 16-64-123 (1987)), and we conclude that the compensa-

tory damages awarded do not shock the conscience of this court. What is at issue here is an assault and battery which took place during the dead of night when the Smiths were in bed in their home. Jerry Smith was roused from his bed, beaten, and threatened with a pistol, and Brenda Smith was threatened with rape and choked. Both Smiths were tied up. The experience was unquestionably and understandably traumatic and cause for considerable mental anguish. Under these facts, we do not find the jury award of $250,000 as compensatory damages for each Smith against Hansen and Rice to be unconscionable. The remittitur order is reversed, and the matter is remanded with directions to reinstate the original verdicts of $250,000.

## IV. Cross-Appeal

■ Hansen and Rice raise several issues in their cross-appeal, none of which has merit. They allege, initially, that the trial court erred in not granting them a new trial based on the excessiveness of the verdict. The standard of review for the denial of a motion for new trial is whether the verdict was supported by substantial evidence. *Davis* v. *Davis*, 313 Ark. 549, 856 S.W.2d 284 (1993); *Scott* v. *McClain*, 296 Ark. 527, 758 S.W.2d 409 (1988). Metcalf's testimony alone easily constitutes substantial evidence of agency, battery, and virulent conduct on the part of Hansen and Rice. As already discussed, evidence justifying considerable compensatory damages for mental anguish abounds, and the punitive damages do not strike this court as excessive. The trial court did not err in denying the motion.

■ Hansen and Rice next argue that the trial court was in error in permitting the issue of punitive damages to go to the jury. They particularly disagree with the large discrepancy between the punitive damages assessed against them and the damages assessed against Metcalf and Young. There is no set standard for measuring punitive damages, and the calculation of those damages lies within the discretion of the jury after due consideration of all the attendant circumstances. *Cater* v. *Cater*, 311 Ark. 627, 632, 846 S.W.2d 173 (1993). The penalty must be sufficient to deter similar conduct on the part of the same tortfeasor, and it should be sufficient to deter others who engage in similar conduct. *Id*. The jury is free to consider the extent and the enormity of the wrong, the intent of the parties, and the

financial and social standing of the parties. *McNair v. McNair, supra.*

Hansen and Rice point out that no evidence was presented on their financial condition. They complain that they were prejudiced because, with no evidence in the record, the jury was free to assume that they could afford to pay a sizable punitive judgment, which they cannot. The Smiths respond that no showing of financial condition is required, and they emphasize the varying degrees of culpability to justify the discrepancy in the awards. We note that the outrage claim was directed only at Rice and Hansen, and further that Metcalf was the least culpable in that he did not strike the Smiths. He also testified on their behalf. The trial court did not err in submitting the issue of punitive damages to the jury.

Hansen and Rice further argue that a 1991 U.S. Supreme Court opinion requires a remand in this case on the issue of punitive damages. In *Pacific Mut. Life Ins. Co v. Haslip*, 499 U.S. 1 (1991), the Court analyzed Alabama's law on punitive damages and observed that it has more than once approved the common law approach for assessing punitive damages. *Haslip*, 499 U.S. at 15. However, the Court did allude to the fact that due process considerations may come into play when unlimited jury discretion leads to extreme results in the punitive damages award. With general concerns of reasonableness in mind, the court held that the award in that case did not violate the Due Process Clause of the Fourteenth Amendment.

Our law, as evidenced by AMI 2217, is like Alabama's and does not provide for unlimited jury discretion. Punitive damages, under AMI 2217, are awarded for deterrence and retribution purposes. AMI 2217 also instructs the jury that the imposition of punitive damages is not mandatory. We find no grounds for a remand on the basis of the *Haslip* decision. *See J.B. Hunt Transport, Inc. v. Doss*, 320 Ark. 660, 899 S.W.2d 464 (1995).

Finally, Hansen and Rice contend that the trial court erred in permitting the jury to even consider a verdict on the tort of outrage. They submit that there was no evidence to support the finding that their conduct was so outrageous and extreme as to be regarded as atrocious and utterly intolerable. Again, they

submit that their conduct was negligent at best. They implore this court to remand the case with the tort of outrage claim removed. We disagree. Substantial evidence was introduced to satisfy the elements of the tort of outrage by means, primarily, of Metcalf's testimony which established a contract beating instigated by Hansen and Rice.

■ Hansen and Rice further urge that a general verdict amount renders it impossible to know whether the jury award was based on battery or outrage. Because we do not consider submission of the outrage count to the jury to be error, this point presents no basis for reversal. In addition, we have held that the time to object to any irregularity in the verdict form is prior to the discharge of the jury. *P.A.M. Transp., Inc.* v. *Arkansas Blue Cross and Blue Shield*, 315 Ark. 234, 868 S.W.2d 33 (1993); *Wal-Mart Stores, Inc.* v. *Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991). Hansen and Rice raised no objection to the verdict forms either before or after the verdict was rendered.

Affirmed in part. Reversed in part and remanded.

GLAZE, J., not participating.