Donald L. DUNN and Joe Cloud *v.* Craig WESTBROOK and Mitchell, Williams, Selig, Gates and Woodyard

97-1218                                         971 S.W.2d 252

Supreme Court of Arkansas
Opinion delivered July 9, 1998
[Petition for rehearing denied September 10, 1998.]

*Timothy O. Dudley*, for appellants.

*Barber Law Firm*, by: *Robert L. Henry, III*, for appellees.

DAVID NEWBERN, Justice. This is a legal-malpractice case. Drs. Donald L. Dunn and Joe Cloud, the appellants, were partners in a medical practice with Dr. Larry Battles. Attorney Craig Westbrook, the appellee, prepared a partnership agreement for the doctors in 1991 and made revisions to it on July 8, 1993. Dr. Battles sued Drs. Dunn and Cloud after they expelled him from the practice in 1995. Drs. Dunn and Cloud paid Dr. Battles $200,000 to settle the matter and then brought a malpractice action against Mr. Westbrook and his law firm, Mitchell, Williams, Selig, Gates & Woodyard ("Mitchell Firm").

The complaint, filed on July 5, 1996, alleged that Mr. Westbrook was negligent for failing to include in the partnership agreement a "buy-out provision" allowing members of the partnership to expel a fellow member and purchase his partnership interest upon set terms. Drs. Dunn and Cloud alleged that the cost of removing Dr. Battles from the practice would have been less had the buy-out provision been included. The Trial Court granted summary judgment to Mr. Westbrook and the Mitchell Firm on

the ground that the complaint was filed beyond the three-year limitations period prescribed by Ark. Code Ann. § 16-56-105 (1987). We affirm.

■■ As this is a legal-malpractice action, Ark. Code Ann. § 16-56-105 is the applicable statute of limitations. The statute requires a claim for malpractice to be filed within three years of "when the negligence occurs." *Goldsby v. Fairley*, 309 Ark. 380, 383, 831 S.W.2d 142, 143 (1992). In their complaint, Drs. Dunn and Cloud alleged two separate "occurrences" of negligence. They first alleged that Mr. Westbrook was negligent in 1991 when he drafted the partnership agreement without including a buy-out provision. The complaint asserting that claim was filed on July 5, 1996, well beyond the three-year limitations period. Therefore, under § 16-56-105, Mr. Westbrook and the Mitchell Firm were entitled to summary judgment on the claim that Mr. Westbrook committed legal malpractice in 1991.

■ Drs. Dunn and Cloud also alleged that Mr. Westbrook was negligent on July 8, 1993, when he *revised* the partnership agreement without including a buy-out provision. Thus, the complaint, filed on July 5, 1996, was timely in relationship to this second alleged "occurrence" of negligent conduct on Mr. Westbrook's part. We therefore agree with Drs. Dunn and Cloud that § 16-56-105 did not entitle Mr. Westbrook and the Mitchell Firm to summary judgment on the separate claim that Mr. Westbrook committed legal malpractice on July 8, 1993.

■ We hold, however, that summary judgment on the claim pertaining to Mr. Westbrook's revising of the agreement in 1993 was properly granted for a different reason. As we have often said, "we will affirm the trial court where it reaches the right result, even though it may have announced the wrong reason." *Marine Servs. Unlimited, Inc. v. Rakes,* 323 Ark. 757, 763, 918 S.W.2d 132, 134 (1996). *See Calcagno v. Shelter Mut. Ins. Co.,* 330 Ark. 802, 807, 957 S.W.2d 700, 702 (1997); *Nettleton Sch. Dist. v. Owens,* 329 Ark. 367, 373, 948 S.W.2d 94, 97 (1997). Here, even if § 16-56-105 did not bar the doctors' claim that Mr. Westbrook was negligent for failing to add the buy-out provision to the partnership agreement in the course of revising it in 1993, summary judgment was nonetheless proper on that claim because Mr. West-

brook owed no duty to his clients in 1993 to render that particular service.

■ As commentators have observed, "an attorney cannot be negligent for failing to do what there was no duty to undertake." 1 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 8.2, at p. 556 (4th ed. 1996). "If no duty of care is owed, the negligence count is decided as a matter of law, and summary judgment is appropriate." *Smith v. Hansen*, 323 Ark. 188, 196, 914 S.W.2d 285, 289 (1996). *See also First Commercial Trust Co. v. Lorcin Eng'g, Inc.*, 321 Ark. 210, 213, 900 S.W.2d 202, 203 (1995); *Lawhon Farm Supply, Inc. v. Hayes*, 316 Ark. 69, 71, 870 S.W.2d 729, 730 (1994); *Keck v. American Employment Agency, Inc.*, 279 Ark. 294, 652 S.W.2d 2 (1983).

■ We have admittedly few statements in our decisions describing in detail the duty owed by an attorney to his client. In very general terms, we have said that the attorney's duty is "to exercise reasonable diligence and skill on behalf of the client." *Pugh v. Griggs*, 327 Ark. 577, 581, 940 S.W.2d 445, 447 (1997). According to the commentators, "[t]he liability of the attorney depends on whether a duty was breached that was reasonably within the scope of the employment." MALLEN & SMITH, *supra*, at p. 558. The agreement, if any, and the "subject matter of the retention" are relevant in determining the existence or scope of the duty. *Id.* In addition, a duty may be implied: "The basic principle of an implied duty is that an attorney should do all things reasonably necessary to fulfill the objective of the employment." *Id.* at p. 559.

The undisputed facts in this case show that Mr. Westbrook was retained in late 1990 to draft the doctors' partnership agreement. The agreement was then executed in 1991. Over two years later, an accountant associated with the doctors' practice requested Mr. Westbrook to revise the partnership agreement, for tax-relief purposes, to reflect that the individual doctors, rather than the partnership, owned a life-insurance policy. Mr. Westbrook completed that task on July 8, 1993. There is no dispute that Mr. Westbrook — both prior to the time that he drafted the partnership agreement in 1990-91, and prior to the time that he revised it in 1993 — was not requested by the doctors to include a buy-out provision in the partnership agreement.

■ On these facts, we cannot say that Mr. Westbrook owed any duty to Drs. Dunn and Cloud to add a buy-out provision to the partnership agreement in the course of revising it in 1993. Over two years had passed from the time of the agreement's initial drafting to the time that it was revised. Not once did Drs. Dunn and Cloud suggest to Mr. Westbrook that the agreement was incomplete or unsatisfactory in any way. The revision that Mr. Westbrook was requested to make in 1993 pertained only to the insurance policy mentioned above. The doctors did not direct Mr. Westbrook to review the entire agreement. Thus, although Mr. Westbrook might have been under a duty at the time of the agreement's initial drafting to include a buy-out provision, even in the absence of a specific request from his clients, we cannot say that such a duty existed in 1993 when his assigned task was merely to revise the agreement for the purpose of clarifying the ownership of a life-insurance policy.

We note in closing that courts in some jurisdictions have recognized a "peripheral duty" in the context of legal-malpractice cases. *See* MALLEN & SMITH, *supra,* at pp. 561-62. According to those courts' decisions, an attorney may have a duty to provide certain services to his client even "if neither the lawyer nor the client intended the matter to be within the scope of the retention." *Id.* at p. 561. Drs. Dunn and Cloud neither cite those decisions nor urge us to adopt a "peripheral duty" rule. We therefore decline to adopt such a rule in this case. The question whether we *should* adopt the "peripheral duty" rule remains an open one, however, and we will reserve judgment on that issue until it is squarely before us.

Affirmed.

GLAZE and BROWN, JJ., concur.

TOM GLAZE, Justice, concurring. I agree with the majority opinion, but do so solely on the rationale contained in *Goldsby v. Fairley*, 309 Ark. 380, 831 S.W.2d 142 (1982), and *Wright v. Compton, Prewitt, Thomas & Hickey*, 315 Ark. 213, 866 S.W.2d 387 (1993).

BROWN, J., joins this opinion.