# D.B. GRIFFIN WAREHOUSE, INC. *v.*
## Margaret SANDERS

97-1573 986 S.W.2d 836

Supreme Court of Arkansas
Opinion delivered March 4, 1999

458

*Daggett, Van Dover, Donovan & Perry, PLLC,* by: *J. Shane Baker,* for appellant.

*Wilson & Valley,* by: *E. Dion Wilson,* for appellee.

W H. "DUB" ARNOLD, Chief Justice. On October 23, 1991, as an employee of Delta Hardware and Lumber Company (hereinafter "Delta") of Elaine, Arkansas, Charles Sanders, deceased, along with two other Delta employees, was assigned the task of spray-painting the metal roof of a cotton warehouse located in West Helena, Arkansas, and owned and operated by Griffin, the appellant. In the process of undertaking this assignment, Charles Sanders fell to his death through a skylight located in the roof of the warehouse.

After Margaret Sanders, appellee and widow of Charles Sanders, had received workers' compensation benefits from Delta's workers' compensation carrier, she brought an action against the appellant for wrongful death, alleging that appellant had breached specified duties of ordinary care, that it failed to warn of certain hidden defects in the warehouse roof, that it failed to provide certain safety devices that would have prevented his fall, and that it failed to provide him with a safe working environment.

Prior to trial, in its responsive pleadings and in motions for summary judgment, appellant had denied appellee's allegations and any liability to appellee, alleging that because Sanders was an employee of an independent contractor (Delta) it had breached no duty to Sanders that proximately caused his fall, that it had no duty to provide safety devices, and that it had no duty to provide Sanders with a safe working environment. Appellant's motions for summary judgment were denied.

Over the course of the four days of trial, the testimony of thirteen witnesses and numerous documentary exhibits were admitted into evidence. At the conclusion of Sanders's proof, as well as at the close of all of the proof, appellant motioned the court for directed verdicts on the issues of Delta's status as an independent contractor and liability, negligence, and proximate cause on behalf of appellant. These motions, as well as proffered jury instructions regarding these issues, were denied by the trial court.

On May 23, 1997, the jury returned a verdict for appellee in the amount of $488,958.00. The verdict form was signed by only nine of the jury's twelve members. Pursuant to a timely motion for new trial filed by appellant, the court held a posttrial hearing, during which appellant contended that it was entitled to a new trial due to misconduct on the part of one of the nine jury members who had signed the verdict for appellee. Appellant's motion for a new trial was denied by the court.

The appellant now asserts three points on appeal:

1) Refusing to properly apply Arkansas's law on independent contractors to the evidence submitted below, the circuit court erred in denying appellant's motions for directed verdict, in its instructions to the jury, and in refusing to give appellant's proffered instructions:

A) The circuit court erred in denying appellant's motion for a directed verdict on the issue of Delta's status as an independent contractor;

B) The circuit court erred in denying appellant's motion for a directed verdict on the issues of liability, negligence, and proximate cause;

C) The circuit court erred in its instructions to the jury and in failing to give appellant's proffered instructions;

2) The circuit court erred in refusing to admit appellant's rebuttal testimony;

3) The circuit court erred in denying appellant's motion for a new trial based on juror misconduct.

Appellant asserts that an application of the combined holdings of *Dickens v. Farm Bureau Mut. Ins. Co.*, 315 Ark. 514, 868 S.W.2d 476 (1994) and *Jackson v. Petit Jean Electric Co-op.*, 270 Ark. 506, 606 S.W.2d 66 (1980), to the evidence in this case reveals that, at the time of Charles Sanders's death, Sanders was, as a matter of law, an employee of an independent contractor (Delta) to whom the appellant, as the employer of the independent contractor, had breached no duty of care. This being the case, appellant asserts that the circuit court's refusal to direct a verdict in favor of appellant on the issues of Delta's status as an independent contractor and upon the issues of liability, negligence, and proximate cause at the close of all the proof constituted reversible error. Accordingly, appellant asserts that this case must be reversed and dismissed. Our jurisdiction of this case is pursuant to certification from the Arkansas Court of Appeals.

We agree with appellant that the trial court erred on the directed-verdict issue of Delta's status as an independent contractor; however, we cannot agree with appellant that the trial court erred in failing to direct a verdict on the issues of liability, negligence, and proximate cause. However, because the trial court erred in failing to direct a verdict on Delta's status as an independent contractor, this case must be reversed and remanded for a new trial on the additional issue of Griffin's liability to its independent contractor's employee, Mr. Sanders, as well. As a result of the case being reversed and remanded on these points, the remaining points asserted on appeal by the appellant are moot and will not be addressed.

*I. Delta's status as an independent contractor.*

The standard of review of the denial of a motion for a directed verdict is whether the jury's verdict is supported by sub-

stantial evidence; substantial evidence is defined as evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond suspicion or conjecture; when determining the sufficiency of the evidence, the supreme court reviews the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997); *Ouachita Wilderness Inst. v. Mergen*, 329 Ark. 405, 947 S.W.2d 780 (1997).

■ In the *Dickens* case, *supra*, property owners sued their insurer after the insurer had recommended a home repair contractor, whom the property owners later alleged had negligently repaired their home. After judgment was entered for the property owners, the matter was appealed — the only issue on appeal being the propriety of the trial court's ruling that the contractor was, as a matter of law, the agent of the insurer and not an independent contractor. In this Court's holding in *Dickens* that the repairman was an independent contractor, we reasoned that the following factors be considered, citing § 220 of the *Restatement (Second) of Agency*:

(1) the extent of control which, by the agreement, the master may exercise over the details of the work;

(2) whether or not the one employed is engaged in a distinct occupation or business;

(3) the kind of occupation, with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(4) the skill required in the particular occupation;

(5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(6) the length of time for which the person is employed;

(7) the method of payment, whether by the time or by the job;

(8) whether or not the work is a part of the regular business of the employer;

(9) whether or not the parties believe they are creating the relation of master and servant; and

(10) whether the principal is or is not in business.

*Id.* at 517. This Court reasoned that the "right of control" is the principal factor in determining whether the relationship is one of agency or independent contractor.

■ When the factors cited in *Dickens* are applied to the record in this case, it is clear that there was never any substantial evidence from which the trial court could have determined that the jury could find Delta to be an agent of appellant, and not an independent contractor. On the contrary, the evidence submitted to the jury leads to the conclusion that a finding of agency could have only been based on mere "suspicion or conjecture," *Ouachita Wilderness Institute, Inc. v. Mergen*, 329 Ark. 405, 947 S.W.2d 780 (1997), requiring a ruling on behalf of the trial court that Delta was, as a matter of law, an independent contractor.

At the trial of this matter, Gary Inman, appellant's warehouse manager at the time of Sanders's death, testified that the only business activity ever conducted at the warehouse was that of storing cotton, and that neither the warehouse nor any of its employees ever participated in the roofing business in any way. Inman testified that upon a decision being made to have the roof painted, three bids were collected from three different contractors. Delta, Sanders's employer, was selected to do the work.

Gary Carpenter, owner of Delta, testified that Delta's business activity regularly included carpentry work, roof repair, room additions, the construction of steel buildings, and "all phases [of] construction." Carpenter testified that prior to submitting Delta's bid to the appellant, he, unattended by any representative or employee of the appellant, visited the warehouse for the purpose of taking measurements and "walking all four sides of the building." Carpenter testified that upon Delta's bid being accepted by the appellant, Carpenter again revisited the warehouse, unattended by any Griffin representative, and walked over the warehouse roof, making his calculations. He explained that he understood Delta was to "supply the material, the labor, the management, and the clean-up thereafter to complete the job."

Carpenter further testified that appellant had paid an unitemized fee for the entire job. It played no role in deciding what materials Delta would use to complete the work; it played no role in deciding which of Delta's employees would complete the work; it played no role in deciding when the work would begin or be completed; it played no role in deciding how the paint would be applied; and, it played no role in deciding how the warehouse roof surface would be prepared for painting.

Carpenter's testimony was corroborated by the testimony of the Delta employees who actually completed the work on the warehouse, David Anderson and Odell Davis. Anderson testified that when he, along with Sanders and Davis, arrived at the Griffin warehouse to begin the work, there were no Griffin representatives present at the warehouse and that the Delta employees opened Griffin's gates with a key they had been given. Further, he testified that the Delta employees were not given by appellant any of the supplies or equipment needed to complete the work and that no representative of appellant ever attempted to supervise the Delta employees. On the contrary, Anderson explained that the work at the Griffin warehouse occurred as would any normal subcontract work performed by Delta.

In short, pursuant to *Dickens*, the "right of control" in the case at bar clearly belonged to Delta, thereby classifying Delta as an independent contractor to the appellant. Sanders was clearly, as a matter of law, the employee of an independent contractor. The trial court erred in not directing a verdict in favor of appellant on this issue.

## II. Duty owed by employer of independent contractor to independent contractor's employees.

While it is our holding that this case must be reversed and remanded based upon the court's failure to direct a verdict in favor of appellant on the first issue discussed above, we must address the trial court's next obligation, which was to determine the question of the duty owed by the appellant to Sanders. The issue of duty is always one for the trial court and not the jury.

*Bader v. Lawson*, 320 Ark. 561, 898 S.W.2d 40 (1995). If the court finds that no duty of care is owed, the negligence count is decided as a matter of law, and summary judgment (or a directed verdict, as in the case at bar) is appropriate. *Dunn v. Westbrook*, 334 Ark. 83, 971 S.W.2d 252 (1998); *Smith v. Hansen*, 323 Ark. 188, 196, 914 S.W.2d 285, 289 (1996). See also, *First Commercial Trust Co. v. Lorcin Eng'g, Inc.*, 321 Ark. 210, 213, 900 S.W.2d 202, 203 (1995); *Lawhon Farm Supply, Inc. v. Hayes*, 316 Ark. 69, 71, 870 S.W.2d 729, 730 (1994); *Keck v. American Employment Agency, Inc.*, 279 Ark. 294, 652 S.W.2d 2 (1983).

Appellant contends that the trial court's error regarding Delta's status as an independent contractor naturally progressed to its error in failing to apply the analogous *Jackson* case, *supra*, to the case at bar. We disagree. In *Jackson*, an electrical lineman brought a negligence action against the electrical co-op that had entered into a contract with the lineman's employer, an independent electrical contractor, to build new transmission lines. The lineman was injured when he touched a "hot" wire, while participating in the construction of the new lines. As in the instant case, the lineman in *Jackson* recovered against his employer under workers' compensation and then sought to recover in tort from the electrical co-op. Upon the trial court's proper entry of summary judgment on behalf of the electrical co-op, the lineman appealed. This Court held that the entry of summary judgment by the trial court was correct and that the co-op's only duty to the lineman was that of exercising "ordinary care" and to "warn against hidden dangers or unusually hazardous conditions." Our reasoning in *Jackson* was as follows:

> It is generally recognized that an employer of an independent contractor owes a common law duty to the contractor's employees to exercise ordinary care for their safety and to warn against any hidden dangers or unusually hazardous conditions. See *Gordon v. Matson*, 246 Ark. 533, 439 S.W.2d 627 (1969). Relying upon this general principle, Jackson alleges that Petit Jean breached its duty by failing to insulate or isolate its hot wires and failing to de-energize its lines during the work hours of the independent contractor. Under the facts that are entirely without dispute, and giving Jackson the benefit of every contested fact and all favorable inferences, we find no basis in the record for imposing any duty upon Petit Jean to isolate or

de-energize its lines or to warn employees of an electrical contractor that the work as contracted for would be dangerous if not done properly. Certainly, it cannot be seriously contended that Petit Jean should isolate lines from the employees of an electrical contractor whose compensation and contractual obligations expressly contemplate working around energized lines. *The duty of an employer of an independent contractor to use ordinary care or to warn of latent dangers does not contemplate a duty to warn of obvious hazards which are an integral part of the work the contractor was hired to perform.*

\*\*\*

Finally, irrespective of any negligence on the part of Petit Jean, petitioners contend that the negligence of Johnson Construction Company should be imputed to Petit Jean because of the inherently dangerous nature of the work. *Although the general rule is that an employer is not responsible for the negligence of his independent contractor, petitioners rely upon a well-recognized exception which extends liability when the work which the employer delegates to an independent contractor is inherently dangerous. Southwestern Bell Telephone Co. v. Smith,* 220 Ark. 223, 247 S.W.2d 16 (1952). The exception is grounded in a recognition that the possibility of harm to others is so great when the work activity is inherently dangerous that the law tolerates it only on terms of insuring the public against injury. We impose vicarious liability under these circumstances to insure that the public has legal access to a financially responsible party. *The exception was obviously intended to protect those who have no direct involvement with the hazardous activity, are only incidentally exposed to its risks and have no direct means of insuring themselves against loss. Since employees of an independent contractor are directly involved in the hazardous activity, have knowledge of the risks and are insured against injury by worker's compensation, we perceive no sound justification for expanding the exception to include persons it surely was not designed to protect.* [Citations omitted.] (Emphasis added.)

*Jackson,* 270 Ark. 508-510, 606 S.W.2d at 68-69. See also, *Davis v. Lingl Corp.,* 277 Ark. 303, 641 S.W.2d 27 (1982).

■ It was clear in the *Jackson* case that no duty was breached because under the *undisputed* facts in that case, there was no basis in the record for imposing any duty upon Petit Jean to isolate or de-energize its lines or to warn employees of an electrical contractor that the work as contracted for would be dangerous

if not done properly. Certainly, the employees of an electrical contractor whose compensation and contractual obligations expressly contemplated working around energized lines need not be warned of the obvious dangers involved. The duty of an employer of an independent contractor to use ordinary care or to warn of *latent* dangers does not contemplate a duty to warn of obvious hazards which are an integral part of the work the contractor was hired to perform.

There is no doubt in the case at bar that Mr. Sanders knew not to step on the skylights. In fact, he told his fellow workers, Mr. Odell Davis and Mr. David Anderson, to "make sure you don't get on one of those skylights." Just as the electrical lineman in *Jackson* knew he would be working around energized lines, Delta's employees knew not to step on the skylights — an obvious danger.

In the instant case, however, disputed facts exist regarding the *hidden* or *latent* dangers involved in the painting of appellant's roof and whether or not those dangers were known or could have been discovered by appellant with reasonable care. It is true that evidence adduced at trial heavily supported a conclusion that no evidence of any defect or hazardous condition existed on the roof, such as testimony not only by the appellant's own representatives, but by Delta's owner, as well, that the roof was inspected before and after the accident; that the roof was simply rusting, needed painting, and "looked bad;" and, that neither the roof nor the skylights had ever leaked.

Robert Manning, appellant's manager in charge of the day-to-day operation of the warehouse at the time of the accident in 1991, testified that the appellant had been storing cotton in the warehouse since 1988 or 1989 and that he had personally inspected the roof, upon hearing that appellant was considering having it painted, to determine whether or not it actually needed to be painted or simply to be washed. He testified that upon said inspection, he found no defects in the roof; he further testified that there had been no leaks in the roof or skylights, nor any broken skylights or other problems. Manning testified that he found all of the metal roofing, or "tin," surrounding the skylight hole to

be completely intact, with no dented edges indicating that Sanders's fall was caused by the metal roofing giving way. Manning further testified that the roof supported his weight of 290 pounds.

Delta's owner, Gary Carpenter, testified that he had been on the roof twice to inspect it prior to the accident and that he found it to be as sound as "any metal roof we have in this county." In fact, Carpenter testified as follows:

> I've had an occasion to work on buildings with skylights other than the Griffin's building. I worked on my own building. I've had an occasion to see buildings across the community with skylights.
>
> At no time while I was on the roof, *before or after the accident*, did I observe any type of defect in the metal itself, around the hole or anywhere on the roof. I did not at any time while I was on the roof *before or after the accident*, notice any defect in the skylights other than the one that was obviously broken when Mr. Sanders fell through. There were no other skylights broken out or cracked or anything like that. (Emphasis added.)

Still, the testimony of two other witnesses suggests a contrary conclusion. Mr. Edgar H. Reed, Jr., inspector for the Occupational Safety and Health Division of the Arkansas Department of Labor (OSHA), testified that "it was apparent that the skylights had dry rot." Mr. Odell Davis testified that when he went back up on the roof to finish the job after the accident, he noticed an indention in the tin around the skylight. Specifically, he testified as follows:

> Q   Did you notice any — observe any conditions of the tin on the side?
>
> A   That is why I laid down on my stomach and put that — and spread the bisquene [*sic*] over it and put the tape around it laying flat down instead of putting all my weight in one particular spot.
>
> Q   Now why did you lay down on your stomach?
>
> A   It just looked like to me, it was an impression in the tin that maybe this might be where he stepped.
>
> Q   Okay.

A   But it was right there at the skylight. The tin, looked like it might have been bent, it could have been bent prior to that, but didn't have to be.

***

A   . . . . We got the impression, when we went up there to repair the roof, that there was an indention in the tin that look like it might have been a give away or bend or something in it, like it [*sic*] might have stepped on it, been too close to the edge of it. That is what I was trying to make that assertion.

Although Mr. Davis admitted that he did not tell the OSHA inspector about the "indention in the tin," he suggested, when confronted on cross-examination, that his statement may have been given before he went back up on the roof after the accident. If that were the case, he would not have known about the roof's condition around the skylight at the time he gave a statement to the OSHA inspector. Finally, Mr. Davis admitted that he did not actually see the tin give way as Mr. Sanders fell through the skylight. However, he did not believe that Mr. Sanders would have stepped directly onto a skylight within a short time after telling Mr. Davis and Mr. Anderson not to step on the skylights.

■■ When determining whether the jury's verdict is supported by substantial evidence, we review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf the judgment was entered. *Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997); *Esry v. Carden*, 328 Ark. 153, 942 S.W.2d 846 (1997). After reviewing the evidence and all reasonable inferences arising therefrom in the light most favorable to Mr. Sanders, we cannot say that there was no "evidence of the existence of any defect or hazardous condition." It is well settled that the weight and value of testimony is a matter within the exclusive province of the jury. *Esry, supra.* We, therefore, defer to the jury's ascertainment of the credibility of the witnesses who testified about the roof's condition at the time of the accident.

■ Based upon all of the evidence in this case, we cannot say that no substantial evidence existed to support the jury's ver-

dict on the issue of Griffin's liability. Still, for the sole reason that the trial court erred in failing to direct a verdict on Delta's status as an independent contractor, this case must be reversed and remanded for a new trial on the additional issue of Griffin's liability to its independent contractor's employee, Mr. Sanders.

Reversed and remanded.