**Jones v. Bresset**

C.P. of Lackawanna County, no. 94-CV-1103.

*Richard P. Myers,* for plaintiff.
*Joseph Van Jura,* for defendant Bresset.
*Zymunt R. Bialkowski,* for defendant Sayers.
*John G. Murray,* pro se.

NEALON. *J.,* April 19, 2000—Defendant, Joseph G. Murray Esquire, has filed a motion to dismiss a legal malpractice action brought against him by plaintiff, Alfred P. Jones D.M.D., for allegedly failing to advise Dr. Jones about the apparent negligence committed by

the fifth and sixth lawyers who represented him in his bankruptcy case. Since Murray was hired by Dr. Jones solely for the purpose of securing an accounting in the bankruptcy proceeding, and Murray adequately advised Dr. Jones in writing at the inception of their relationship that his representation would not include the investigation or evaluation of potential malpractice by prior counsel, the motion for summary judgment will be granted.

## I. FACTUAL BACKGROUND

The above-captioned legal malpractice litigation is based upon the legal representation received by Dr. Jones, his former partner, Juergen Szukala D.M.D., and their dental practice partnership in connection with their bankruptcy proceedings. By way of background, from 1974 to 1990, Dr. Jones and Dr. Szukala practiced dentistry in a partnership known as "Jones & Szukala." (See plaintiff's complaint ¶1.) Through their original counsel, Peter J. Hoegen, Esquire, Dr. Jones, Dr. Szukala and Jones & Szukala filed three Chapter 11 bankruptcy cases in the U.S. Bankruptcy Court for the Middle District of Pennsylvania. (See defendant's motion for summary judgment, ¶¶5-6; plaintiff's answer to defendant's motion for summary judgment, ¶¶5-6.) The foregoing debtors were subsequently represented by substitute counsel, Russell O'Malley Jr., Esquire, Myles R. Wren, Esquire and James A. Hartz, Esquire, and on April 6, 1989, Dr. Jones, Dr. Szukala and their partnership filed an application to employ their fifth attorney, defendant, Stephen G. Bresset, Esquire, which request was granted by order dated April 10, 1989. (*Id.*, ¶¶8-9.)

Although Bresset remained as counsel of record for all three debtors in the bankruptcy proceedings until February 25, 1998, the interests of Dr. Jones and Dr. Szukala

reportedly became adverse in early 1990 and Dr. Jones "grew critical of the competence and objectivity of Mr. Bresset." (*Id.,* ¶¶10, 28.) In March 1990, Dr. Jones retained another lawyer, defendant, Robert H. Sayers, Esquire, for tax advice regarding the debtors' obligations to the Internal Revenue Service. (See plaintiff's complaint, ¶¶26, 59.) In addition, during the fall of 1991, Dr. Jones hired Murray "to obtain an accounting in the U.S. Bankruptcy Court from Attorney Bresset." (*Id.,* ¶¶4, 33.)

On September 30, 1991, Murray forwarded a letter to Dr. Jones in which he enclosed a draft of a motion for accounting and solicited Dr. Jones' input regarding the same. In his initial correspondence, Murray expressly limited the scope of his representation of Dr. Jones and stated:

"I look forward to representing you and I look forward to your comments on the motion. In the meantime, please be advised that my representation is limited to obtaining an accounting from Mr. Bresset. The accounting may raise certain problems which are outside of my representation. More importantly, there may be causes of action based on knowledge you have. Representing you with reference to those causes of action is also outside the scope of this representation.

"Please understnad (sic) that a two-year statute of limitations may apply to conduct of Mr. Bresset, Mr. Szukolla (sic) and others. I urge you to seek counsel regarding these matters." (See defendant's motion for summary judgment, ¶12; plaintiff's answer to motion for summary judgment, ¶12; defendant's answer and new matter exhibit B.) The record is devoid of any proof or inference that Murray already had knowledge of alleged malpractice by Bresset at the time he delivered his correspondence to Dr. Jones restricting the objective of his representation.

On November 26, 1991, Murray forwarded another letter to Dr. Jones which was entitled *"Re: Motion for accounting; Limitation of representation."* In that correspondence, Murray confirmed the following:

"With this letter, I am transmitting what should be the final draft of the motion for accounting. This final draft incorporates the changes we discussed yesterday.

"Please advise whether the motion in its present form accurately represents not only the facts, but also the relief you seek.

"Last, but not least, I confirm that my representation is limited to the motion for accounting, I have not been retained to investigate, research or prosecute any causes of action against Mr. Bresset." (*Id.,* ¶¶16-17; *Id.,* exhibit C.)

On December 10, 1991, Murray filed a "motion of Alfred P. Jones for accounting of Stephen G. Bresset" with the bankruptcy court, and on December 11, 1991, an order was entered granting the motion. (*Id.,* ¶18.) On December 20, 1991, Dr. Jones delivered a fax transmission to Murray regarding an IRS notice that Dr. Jones had received, in response to which Murray sent a third letter to Dr. Jones memorializing the confines of his representation and remarked:

"I received your fax of December 20 regarding the notice from the Internal Revenue Service. You will note that my representation of you is quite limited.

"You will also note that at least some of the taxes concern years prior to the commencement of your bankruptcy case. You have informed me that certain amounts were paid by Mr. Bresset to the Internal Revenue Service.

"You might wish to consider responding to the notice by advising the Internal Revenue Service of the amount it has received from Mr. Bresset. You might also wish to consider sending them a copy of the motion for account-

ing and the order which was entered granting that motion. Enclosed please find copies of correspondence directed to Mr. Bresset.

"You will excuse me if I provide you no advice regarding tax matters." (*Id.,* ¶19; Murray affidavit, exhibit J.)

After Bresset purportedly failed to comply with the order of December 11, 1991, by furnishing an acceptable accounting, Murray filed a motion on June 8, 1992, seeking to have Bresset found in civil contempt. (Defendant's motion for summary judgment, ¶20; plaintiff's answer to motion for summary judgment, ¶20.) Bresset testified during a civil contempt hearing on July 9, 1992, and a transcript of that proceeding was prepared and provided to Dr. Jones. (*Id.,* ¶27.) Dr. Jones contends "that at the hearing in the U.S. Bankruptcy Court on July 9, 1992, Attorney Bresset misrepresented the facts with regard to the bankruptcy case in order to avoid being held in civil contempt" and "that it was only after the hearing on July 9, 1992, that [Dr. Jones] discovered that Attorney Bresset had committed actionable legal malpractice." (See plaintiff's complaint, ¶¶36-37.) As a result of Murray's filing of the civil contempt action, Bresset eventually provided an accounting and the objective of Murray's representation was achieved. (*Id.,* ¶¶26-27.)

Although Dr. Jones commenced the instant legal malpractice litigation against Bresset, Sayers and Murray on March 11, 1994, Bresset remained as counsel of record for Dr. Jones, Dr. Szukala and their partnership during the ensuing four years. On February 25, 1998, Bresset formally withdrew with court approval and Joseph O'Brien, Esquire, assumed representation of Dr. Jones on March 20, 1998. (*Id.,* ¶28.) At no time from the commencement of the bankruptcy proceedings on November 2, 1984, to the conclusion of that litigation via a final

decree on June 12, 1998, did Murray enter his appearance as attorney for Dr. Jones, Dr. Szukala or the partnership. (*Id.,* ¶¶28-29.) Nor is there any indication in the summary judgment record that Murray failed to properly consult with Dr. Jones before limiting the scope of his professional services or that Dr. Jones ever objected to Murray's limitation of his representation.

In his six count complaint, Dr. Jones has asserted four causes of action against Bresset for negligence, breach of fiduciary duty, conversion and breach of contract. Dr. Jones contends that Bresset: (1) improperly continued to represent all three debtors despite their conflicting interests regarding tax liabilities and his knowledge of Dr. Szukala's undisclosed intentions to unilaterally terminate the partnership on January 18, 1990; (2) misapplied the proceeds from the sale of a property jointly owned by Dr. Jones, his mother and Dr. Szukala by utilizing all of the funds allocated for payment to the IRS to satisfy Dr. Szukala's tax liens only; (3) withdrew Dr. Jones' objections to the IRS claims without his consent; (4) failed to properly negotiate or pay Dr. Jones' IRS obligations; (5) neglected to convert the Chapter 11 bankruptcy to a Chapter 7 proceeding after the partnership was dissolved by Dr. Szukala's termination of it; (6) failed to assure that the debtors' income tax returns were timely filed by the accountants retained by Bresset; and (7) overpaid various unsecured creditors in contravention of the reorganization plan and disclosure statement. (See plaintiff's complaint, ¶¶6-20, 22-23, 30-31, 44-46, 50, 53.)

Dr. Jones further maintains in Count V of the complaint that Sayers was negligent for failing to advise Jones concerning his rights under the Uniform Partnership Act, neglecting to seek a timely modification of the Chapter 11 confirmation order to include a setoff for damage

caused to the business by Dr. Szukala's dissolution of the partnership, failing to ensure that tax returns were timely filed, and not investigating "the possibility of the existence of a legal malpractice action against Bresset." (*Id.,* ¶¶55-62.) As to Murray, Dr. Jones has averred:

"(64) A claim only exists against Attorney Murray if this court determines that the statute of limitations has run on plaintiff Dr. Jones' negligence claims against both Attorney Bresset and Attorney Sayers.

"(65) Attorney Murray attempted in his engagement letter to avoid representing plaintiff Dr. Jones in a legal malpractice action. However, said engagement did not relieve Attorney Murray of the duty to advise plaintiff Dr. Jones that he had a viable legal malpractice action against either Attorney Bresset or Attorney Sayers, or both of them, and when the statute of limitations on such an action would run.

"(66) If Attorney Murray was negligent at all, it was in failing to advise plaintiff Dr. Jones that he had a viable legal malpractice [action] against either Attorney Bresset or Attorney Sayers, or both of them, and when the statute of limitations on such an action would run." (*Id.,* ¶¶64-66.)

Dr. Jones has subsequently acknowledged for purposes of the pending motion for summary judgment that "Joseph G. Murray and Dr. Alfred P. Jones did, in fact, limit the representation to be rendered by Joseph G. Murray for Dr. Alfred P. Jones," although Dr. Jones argues that "the limitation of representation does not excuse the attorney from competently advising the client with regard to other matters which may arise during the course of that limited representation." (See defendant's motion for summary judgment, ¶22; plaintiff's answer to defendant's motion for summary judgment, ¶22.)

Murray submits that he is entitled to summary judgment as a matter of law since he did not owe a legal duty to Dr. Jones except for the sole purpose of obtaining an accounting, which relief he successfully secured. Murray asserts that he distinctly limited the scope of his representation and expressly advised Dr. Jones that he would not investigate or pursue any claims against Dr. Jones' counsel and former partner, and for that reason, even urged Dr. Jones to seek separate counsel regarding those potential causes of action that would be governed by a two-year statute of limitations. Dr. Jones counters that "Murray's oblique language in his letters" does not circumscribe the duty assumed by him since "[t]he danger was that Attorney Murray's advice letter could start the statute of limitations clock ticking at a time when neither he nor [Dr. Jones] knew that any legal harm had occurred. The bottom line is that if subject matter which was the subject of Attorney Murray's representation of [Dr. Jones] should have led a reasonable person to know that legal malpractice had been committed, Attorney Murray should have said so directly, advised [Dr. Jones] of when the statute of limitations would run, and state[d] that he would not represent [Dr. Jones] in such legal malpractice action." (See plaintiff's memorandum of law, p. 7.) Neither party has cited any Pennsylvania law which governs the narrow issue raised by Murray's case-dispositive motion.

## II. DISCUSSION

### (a) *Standard of Review*

Pennsylvania Rule of Civil Procedure 1035.2 provides two bases for the entry of summary judgment prior to trial. Summary judgment may be properly granted while discovery is still pending where "there is no genuine is-

sue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report." *Manzetti v. Mercy Hospital of Pittsburgh,* 741 A.2d 827, 831 (Pa. Commw. 1999) (quoting Pa.R.C.P 1035.2(1)). Additionally, "[a]fter the [close] of discovery relevant to the motion, [summary judgment is also appropriate if] an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action . . . which in a jury trial would require the issues to be submitted to a jury." *Matthews v. Clarion Hospital,* 742 A.2d 1111, 1115, (Pa. Super. 1999) (quoting Pa.R.C.P. 1035.2(2)); *Rivera v. Barone,* 99 Lacka. Jur. 130, 133 (1998).

The moving party bears the burden of proving the non-existence of any genuine issue of material fact. *Walinsky v. St. Nicholas Ukranian Catholic Church,* 740 A.2d 318, 320 n.3 (Pa. Commw. 1999); *Anderson v. Colonial Country Club,* 739 A.2d 1118, 1120 n.7 (Pa. Commw. 1999). In determining whether to grant summary judgment, a trial court must examine the record in a light most favorable to the non-movant and resolve all doubts against the moving party. *Doe v. Philadelphia Community Health Alternatives AIDS Task Force,* 745 A.2d 25, 27 (Pa. Super. 2000); *Catania v. Corestates Bank,* 101 Lacka. Jur. 63, 66 (1999). The entry of summary judgment is warranted only in those cases where the right is clear and free from doubt. *Kee v. Pennsylvania Turnpike Commission,* 743 A.2d 546, 549 (Pa. Commw. 1999); *Reimer v. Lacka. Cty.,* 101 Lacka. Jur. 123, 134-35 (1999).

(b) *Scope of Duty*

In Pennsylvania, "an individual who has taken part in an attorney-client relationship may sue his attorney for

malpractice under either a trespass or assumpsit theory, each of which requires the proof of different elements." *Guy v. Liederbach,* 501 Pa. 47, 55, 459 A.2d 744, 748 (1983); *Fiorentino v. Rapoport,* 693 A.2d 208, 212 (Pa. Super. 1997). Instantly, Dr. Jones has only asserted a cause of action in tort against Murray for legal malpractice under a negligence theory, and has not advanced a separate breach of contract claim. To recover for legal malpractice in a tort action, Dr. Jones must establish: "(1) the employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff." *Kituskie v. Corbman,* 552 Pa. 275, 281, 714 A.2d 1027, 1029-30 (1998); *Boyer v. Walker,* 714 A.2d 458, 462 (Pa. Super. 1998).

Whether a legal duty exists under a particular set of facts is usually a question of law for the court to decide. *Althaus by Althaus v. Cohen,* 710 A.2d 1147, 1152 (Pa. Super. 1998); *Catalano v. Triple A Security,* 101 Lacka. Jur. 311, 315 (2000). Generally, "the primary issue in a legal malpractice suit is not the existence of a duty but the extent of that duty," and "[t]he extent of the duty derives from the circumstances, being the subject matter of the retention and the parties' agreement." Mallen, R.E., Smith, J.M., *Legal Malpractice,* §8.2, p. 558 (4th ed. West Publishing 1996). Regrettably, there is a paucity of case law in Pennsylvania discussing the duty imposed upon a lawyer who expressly restricts the scope of his representation and informs the client in writing of that fact.

"It is old, settled law that persons may alter by express agreement the legal relationship they would normally have had by operation of law." *Ress v. Barent,* 378 Pa. Super. 397, 408, 548 A.2d 1259, 1265 (1988). In the

context of an attorney-client relationship, Rule 1.2(c) of the Rules of Professional Conduct similarly provides that "[a] lawyer may limit the objectives of the representation if the client consents after a full disclosure of the circumstances and consultation." The official comment accompanying Rule 1.2 further notes that "[t]he objectives or scope of services provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client."

In the case at bar, Dr. Jones acknowledges his receipt of, and lack of objection to, Murray's letters delineating the parameters of his representation. The effectiveness of Murray's correspondence restricting the nature of his professional services is contingent upon Dr. Jones having consented to the same after appropriate consultation. See *Benet v. Schwartz,* 1995 WL 117884, *4 (N.D. Ill. 1995) (Illinois Rule Prof. Resp. 1.2(c) permits a lawyer to limit his responsibilities to a client "only after disclosure"); *Healy v. Axelrod Constr. Co.,* 155 F.R.D. 615, 620 (N.D. Ill. 1994) (finding that an attorney had not satisfied the disclosure requirements of Rule 1.2(c) as a prerequisite to limiting the objectives of representation); *In re Bancroft,* 204 B.R. 548, 552 (C.D. Ill. 1997) (discussing disclosure required under Rule 1.2(c) in a bankruptcy setting). Dr. Jones does not contend that Murray neglected to secure his consent to Murray's limited services after full disclosure.

In the absence of a written understanding to the contrary, a lawyer may assume by operation of law an implied duty to represent or advise a client regarding collateral matters. See *e.g., Nichols v. Keller,* 15 Cal. App. 4th 1672, 1683-84, 19 Cal. Rptr. 2d 601, 608 (1993) (attorney hired to handle a worker's compensation claim

may be liable for failing to alert the client about the possible existence of a third party claim and his need to retain other counsel); *Daugherty v. Runner,* 581 S.W.2d 12, 17 (Ky. App. 1978) (attorney handling a wrongful death case was obligated to advise the client of a potential medical malpractice claim arising out of the same incident). Compare *Dunn v. Westbrook,* 334 Ark. 83, 86, 971 S.W.2d 252, 254 (1998) (lawyer hired to revise a partnership agreement for tax purposes did not have a duty to insert or recommend a buy-out provision to ensure resolution of a dispute in the event a partner was removed); *Landis v. Hunt,* 80 Ohio App.3d 662, 673, 610 N.E.2d 554, 561 (1992) (attorney consulted concerning estate planning issues did not have a duty to investigate a medical malpractice claim). One treatise has concluded that a lawyer may insulate himself from inadvertently assuming implied duties by providing the client with "a non-engagement letter [that] should refer in general to statutes of limitations" and which encourages the client "to consult another attorney." *Legal Malpractice, supra* at §2.11, p. 135. That text further cautions:

"As the preceding decisions illustrate, lawyers can avoid unintended duties being imposed by using non-engagement letters and disclaimers. This is especially true when dealing with prospective clients. For example, a Nevada plaintiff sued the lawyer for failing to file a personal injury action against her husband for physical, emotional and sexual abuse during their marriage. The lawyer agreed to evaluate the case, but claimed that she told her client that she would not bring the action. The court observed that the issue was disputed and noted that the lawyer 'never wrote a letter to [the plaintiff] to this effect.' " *Id.,* section 8.3, p. 96 (1999 suppl.) (quoting *Allyn v. McDonald,* 910 P.2d 263, 265 (Nev. 1996)).

In contrast to the lawyer in the Nevada case, Murray specifically limited the purview of his representation of Dr. Jones to securing an accounting, and disclaimed any obligation to provide tax advice or explore any potential causes of action against Dr. Jones' counsel or any other parties. Although Murray declined to investigate or handle any putative malpractice claims, he nevertheless informed Dr. Jones of the possible applicability of a two-year statute of limitations and implored him to seek the advice of other counsel regarding those matters. More importantly, Murray's letters defining the confines of his representation were authored at the inception of his attorney-client relationship with Dr. Jones and there is no suggestion in the record that Murray was already cognizant of alleged malpractice by Bresset at that time.

Based upon the unique circumstances surrounding Murray's retention in this case as reflected by the uncontroverted letters that were delivered to Dr. Jones, it is clear that Murray did not owe a legal duty to Dr. Jones with regard to a legal malpractice claim against Bresset or Sayers. As a consequence. Dr. Jones cannot establish that Murray breached a professional duty of care and, therefore, his legal malpractice claim against Murray must fail as a matter of law. See *Cost v. Cost,* 450 Pa. Super. 685, 691-92, 677 A.2d 1250, 1254 (1996). Thus, Murray's motion for summary judgment will be granted.

It should be noted that the holding in this case is limited to the peculiar facts at issue in this matter. If Murray had had actual knowledge of malpractice or misconduct by Dr. Jones' prior counsel when he first undertook his assignment and had neglected to advise Dr. Jones of that negligence, the governing statute of limitations and the need to retain counsel to investigate those claims,

Murray's motion for summary judgment may very well have been decided differently. Alternatively, if Dr. Jones had not been represented contemporaneously by other counsel during the course of Murray's services, or if the scope of Murray's representation had been so drastically restricted as to compromise his ability to provide competent representation in accordance with R.C.P. 1.1, his limitation of representation could arguably have been deemed ineffective under Rule 1.2(c). See *Johnson v. Board of County Commissioners of Fremont,* 85 F.3d 489, 492 (10th Cir. 1996) (while Colorado R.P.C. 1.2(c) allows a lawyer to limit the objectives of his representation, "a client may not be asked to agree to representation so limited in scope as to violate Rule 1.1").

A lawyer who is hired to prosecute an injured employee's workers' compensation claim may have a duty to discover the existence of a third party claim against a defective product manufacturer or a negligent treating physician and to advise the client concerning the same. Similarly, it is incumbent upon a defense attorney who is hired to appeal a criminal defendant's conviction to inform the client of any ineffective assistance of counsel claim that [s]he may be entitled to assert against trial counsel. The disposition of Murray's motion for summary judgment is confined to the facts of this case and should not be misconstrued as granting license to successor attorneys to turn a blind eye to any apparent malpractice or misconduct by prior counsel. See R.P.C. 1.1 (competence), 1.3 (diligence), 1.4 (communication), 3.1 (meritorious claims and contentions).

## ORDER

And now, April 19, 2000, upon consideration of the "motion of defendant, Joseph G. Murray, for summary

judgment," the memoranda of law submitted by the parties, and the oral argument of counsel, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) The motion of defendant, Joseph G. Murray, for summary judgment is granted;

(2) All claims of negligence against defendant, Joseph G. Murray, Esquire, as set forth in Count VI of the complaint are dismissed as a matter of law; and

(3) The clerk of judicial records is directed to enter judgment in favor of defendant, Joseph G. Murray, Esquire, and against plaintiff, Alfred P. Jones D.M.D., as to the claims asserted against defendant, Joseph G. Murray, Esquire.