Gail M. FLATOW, and Flatow Comer
LLP, Appellants–Defendants,

v.

Dwane INGALLS, Appellee–Plaintiff.

No. 49A02–0910–CV–994.

Court of Appeals of Indiana.

Aug. 16, 2010.

Rehearing Denied Oct. 21, 2010.

John David Hoover, Patrick J. Olmstead, Jr., Hoover Hull LLP, Indianapolis, IN, Attorneys for Appellant.

Scott A. Weathers, Travis W. Montgomery, The Weathers Law Office, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Gail Flatow and Flatow Comer LLP (collectively, the "Flatow Defendants") appeal the trial court's denial of their motion for summary judgment in a lawsuit brought against them by Dwane Ingalls for legal malpractice. The Flatow Defendants raise three issues for our review, which we consolidate and restate as one: whether the trial court properly denied the Flatow Defendants' motion for summary judgment. Concluding there are no genuine issues of material fact and the Flatow Defendants are entitled to judgment as a matter of law, we reverse and remand.

### Facts and Procedural History

In 2004, Ingalls filed a four-count lawsuit against his former employer, Indianapolis Power & Light Company ("IPL"), alleging breach of employment contract, wrongful termination/retaliatory discharge, failure to pay wages owed, and defamation. In November 2006, the wage claim was dismissed on summary judgment. Although three claims remained viable thereafter, in July 2007, Ingalls hired the Flatow Defendants to represent him as to the defamation claim only. The Contract to Hire Attorney provided, in relevant part, as follows:

I. *SCOPE OF SERVICES*

[Ingalls] has engaged [the Flatow Defendants] to represent [him] in his defa-

mation claim against his former employer … and/or employees of his former employer. [The Flatow Defendants] agree [ ] to draft a motion for summary judgment and a reply brief in the above matter.

As we have discussed, this Contract does not encompass, nor does it engage [the Flatow Defendants] to represent [Ingalls] in any matter not described above. [The Flatow Defendants'] representation in this matter includes inception of the matter through the end of trial. In the event of a mistrial, an appeal, a retrial or any other activity beyond that specifically stated herein, [the Flatow Defendants] and [Ingalls] agree that a separate Contract will be drawn to cover such activity.

* * *

## V. CLIENT COOPERATION AND MUTUAL COMMUNICATION

In order to effectively advocate [Ingalls's] interests, it is important for [Ingalls] to understand, that [Ingalls] has an affirmative obligation to assist and to cooperate with [the Flatow Defendants] during this engagement. . . .

In return, [the Flatow Defendants] will keep [Ingalls] informed of the status of this matter and consult with [Ingalls] when appropriate. Copies of significant correspondence and documents will be sent to [Ingalls].

Appendix of Appellants at 59–61. In September 2007, the Flatow Defendants filed on Ingalls's behalf a Motion for Partial Summary Judgment and Brief in Support on the defamation claim. On November 5, 2007, IPL filed a Brief in Opposition to the motion for partial summary judgment. Also on that day, IPL filed a cross-motion for summary judgment on all three remaining counts of Ingalls's complaint, including the defamation count. Ingalls did not file a reply to IPL's response to his motion for partial summary judgment, nor did he file a response to IPL's cross-motion for summary judgment. On December 18, 2007, the trial court granted summary judgment to IPL on its cross-motion and dismissed Ingalls's remaining claims with prejudice. On IPL's motion, the trial court on April 24, 2008, entered an order that final judgment in the case be entered in IPL's favor. Ingalls did not appeal the summary judgment decision.

On December 4, 2007, Ingalls had filed a legal malpractice complaint against two attorneys who had represented him earlier in the IPL litigation. On June 11, 2008, Ingalls amended the legal malpractice complaint to add the Flatow Defendants and alleged as follows:

17. On or about November 5, 2007, Defendants in the Lawsuit served a copy of their Motion for Summary Judgment and Appendix in support of the Motion, and Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment with Appendix upon Flatow. . . .

18. Flatow failed to respond to Defendants' Motion for Summary Judgment and, on December 18, 2007, the Court granted Defendants' Motion for Summary Judgment and dismissed Ingalls' claims with prejudice. . . .

19. Flatow did not inform Ingalls of her failure to respond to the Defendants' Motion for Summary Judgment, or of the Court's Order granting said Motion, until approximately January 18, 2008, after the time for appeal had passed.

20. Flatow's representation of Ingalls was deficient and fell below the applicable standard of care for Indiana attorneys because she failed to respond to Defendants' Motion for Summary Judgment.

21. Ingalls has been damaged by Flatow's negligence and breach of duty in an amount to be proven at trial.

*Id.* at 12–13. In March 2009, the Flatow Defendants filed a motion for summary judgment as to Ingalls's claim against them. The Flatow Defendants designated the summary judgment materials submitted in support of IPL's motion in the underlying litigation. Ingalls filed a response to the motion for summary judgment and the Flatow Defendants filed a reply. In August 2009, the trial court denied the motion for summary judgment. The Flatow Defendants then sought and were granted permission to pursue this interlocutory appeal.

### Discussion and Decision

### I. Summary Judgment Standard of Review

Summary judgment is appropriate only when the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 318 (Ind.Ct. App.1991).

We review the denial of a motion for summary judgment *de novo. Univ. of S. Ind. Found. v. Baker,* 843 N.E.2d 528, 531 (Ind.2006). We examine only those materials properly designated by the parties to the trial court. *Trietsch v. Circle Design Group, Inc.,* 868 N.E.2d 812, 817 (Ind.Ct. App.2007). We construe all facts and reasonable inferences drawn from them in favor of the non-moving party, *Am. Home Assurance Co. v. Allen,* 814 N.E.2d 662, 666 (Ind.Ct.App.2004), *trans. dismissed,* and resolve all doubts as to the existence of a material issue against the moving party, *Tibbs v. Huber, Hunt & Nichols,*

*Inc.,* 668 N.E.2d 248, 249 (Ind.1996). The party appealing the trial court's summary judgment decision has the burden of persuading us that the decision was erroneous. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 908 (Ind.2001).

### II. Legal Malpractice

To prove a legal malpractice claim, a plaintiff must establish: 1) employment of the attorney (duty); 2) failure of the attorney to exercise ordinary skill and knowledge (breach); 3) proximate cause (causation); and 4) loss to the plaintiff (damages). *Thayer v. Vaughan,* 798 N.E.2d 249, 255 (Ind.Ct.App.2003), *trans. denied.* It is appropriate for a trial court to grant an attorney summary judgment on a legal malpractice claim if the designated evidence negates at least one of these elements. *Van Kirk v. Miller,* 869 N.E.2d 534, 540–41 (Ind.Ct.App.2007), *trans. denied.* In Indiana, an attorney's duty is generally "to exercise ordinary skill and knowledge." *Id.* at 544 (citation omitted). Proximate cause requires the plaintiff to show at a minimum that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence. *Id.* Such proof typically requires a "trial within a trial." *Picadilly, Inc. v. Raikos,* 582 N.E.2d 338, 344 (Ind.1991).

Ingalls's complaint alleges the Flatow Defendants were negligent in failing to respond to IPL's cross-motion for summary judgment. We note first that Ingalls and the Flatow Defendants entered into a contract for limited representation. Indiana Professional Conduct Rule 1.2(c) allows "the scope and objectives of the representation" to be limited "if the limitation is reasonable under the circumstances and the client gives informed consent." Unfortunately, this rule has not been addressed in any substantive way by the appellate courts of this state. *Cf. India-*

napolis Podiatry, P.C. v. Efroymson, 720 N.E.2d 376, 381 n. 4 (Ind.Ct.App.1999) (noting in a footnote that "[o]ur appellate courts have not explicitly addressed the nature of the consultation required before an attorney may limit the scope of his or her representation"), trans. denied. Comment 6 to Rule 1.2(c), however, notes that "limited representation may be appropriate because the client has limited objectives for the representation. In addition, the terms upon which representation is undertaken may exclude specific means that might otherwise be used to accomplish the client's objectives." Comment 7 further notes that "[a]lthough an agreement for a limited representation does not exempt a lawyer from the duty to provide competent representation, the limitation is a factor to be considered when determining the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Although three counts of Ingalls's complaint remained viable at the time he engaged the services of the Flatow Defendants, the limitation provisions of the contract between Ingalls and the Flatow Defendants provided that the Flatow Defendants would represent him only as to the defamation count and that they would draft a motion for summary judgment and a reply brief as to that count.[1] As we are to interpret a contract to harmonize all provisions rather than

place them in conflict, Whitaker v. Brunner, 814 N.E.2d 288, 294 (Ind.Ct.App. 2004), trans. denied, and as specific provisions in a contract control over general provisions relating to the same subject, Magee v. Garry–Magee, 833 N.E.2d 1083, 1092 (Ind.Ct.App.2005), we view the contract provision stating the Flatow Defendants will represent Ingalls from "inception of the matter through the end of trial" in light of the more specific provisions and conclude the "matter" is Ingalls's summary judgment motion, and that although the Flatow Defendants may be alongside Ingalls through the entire proceedings, they will be active only on this one limited matter. In addition, the Flatow Defendants were to keep Ingalls informed of the status of the matter and forward copies of significant correspondence and documents.

There is no evidence regarding how or why the limited representation agreement was reached, but it is apparent from the written contract that there was some consultation between the Flatow Defendants and Ingalls, and that Ingalls agreed to the limited representation described therein. Ingalls does not allege that he did not understand the agreement or that he did not give consent to it. Under the terms of that agreement, the Flatow Defendants' only duty was to file a motion for summary judgment on Ingalls's defamation claim,

1. As to the other two counts, Ingalls was either proceeding pro se or was represented by other counsel. Ingalls was represented by two different attorneys prior to filing an appearance to proceed pro se on April 7, 2006. Unfortunately, the Chronological Case Summary ("CCS") for the IPL litigation that is included in the record does not include complete entries for each date, and shows only that on October 27, 2006, "Ellen Corcella and Nicholas Huang filed appearance for." App. of Appellants at 789. The Flatow Defendants entered their appearance for Ingalls on September 27, 2007. That appearance is not included in the record before us, so we are

unable to ascertain if it alerted the trial court and the other parties to the limited nature of the Flatow Defendants' representation. IPL's brief in opposition to Ingalls's motion for partial summary judgment and its motion for summary judgment were served on Corcella, Huang, and Flatow. See id. at 174, 343. However, Ingalls asserts in an affidavit designated in opposition to the Flatow Defendants' motion for summary judgment that had he been informed of IPL's motion for summary judgment, he "would have hired counsel to file an appropriate response...." Id. at 702. Thus, the status of Ingalls's representation as to the non-defamation counts is unclear.

reply to any response thereto, and keep Ingalls informed of the status of *that* matter.

■ The designated evidence regarding the underlying litigation shows the Flatow Defendants filed a motion for partial summary judgment and supporting brief regarding Ingalls's defamation claim on September 27, 2007. IPL filed a brief and appendix in opposition to Ingalls's motion; Ingalls did not respond.[2] On January 18, 2008, Ingalls called Flatow and recorded their conversation, a transcript of which was attached to his affidavit. During the conversation, Flatow informed Ingalls that the trial court granted IPL's motion for summary judgment and the following exchange occurred:

> [Ingalls]: ... I don't know what was responded to. I didn't even know they filed it.
>
> [Flatow]: I didn't either. I didn't know that they had filed summary judgment until just recently. So—because it was all in one package, you know what I mean? It was all labeled as their response to my motion for summary judgment. Well, you know. I sent it to you.
>
> I: You what?
>
> F: I sent it to you. What they filed. Which was gigantic.
>
> I: Yeah.... I was in Oklahoma, you know, and that's why I had sent you the email and said, hey, have you seen the response yet.... And I don't think I got a reply. And when I was back home that's when I saw this and that's when I sent you the email and said whoa, this is extremely urgent, what have we done.

App. of Appellants at 707–09.

To the extent the Flatow Defendants had a duty to maintain contact with Ingalls regarding this matter, the January 2008 conversation Ingalls has designated demonstrates that the Flatow Defendants did forward copies of IPL's motions to him, including both the response to his motion for partial summary judgment and IPL's cross-motion for summary judgment, and thus did not breach their duty. To the extent the Flatow Defendants had a duty pursuant to the contract to file a reply brief as to Ingalls's motion for partial summary judgment on his defamation claim, they breached that duty by failing to do so or by failing to consult with Ingalls before deciding not to do so. However, although Trial Rule 56(E) allows affidavits in support of or opposition to a motion for summary judgment to be supplemented with depositions, answers to interrogatories, or additional affidavits, Ingalls has not alleged any supplemental evidence that could have or should have been provided to the trial court in reply to IPL's response. Accordingly, there is no designated evidence in the malpractice litigation to show the result of Ingalls's partial motion for summary judgment would have been any different had a reply been filed. Thus, there is a failure to prove proximate cause.

■ Finally, as to Ingalls's allegation that the Flatow Defendants should have filed a response to IPL's cross-motion for summary judgment, such a response was not part of the limited representation to which the parties had agreed, as discussed above. Although IPL's cross-motion for summary judgment did encompass the defamation claim, the contract provided the Flatow Defendants agreed to file only a motion for summary judgment and reply in that matter. The Flatow Defendants forwarded IPL's cross-

---

**2.** Although no such order appears in the record, the CCS for the underlying litigation shows that on November 19, 2007, "Court approves order denying plaintiff's motion for partial [sic]."

motion for summary judgment to Ingalls, and it was then incumbent upon him to seek any further representation he needed as to the defamation and other claims.[3] *See Dunn v. Westbrook,* 334 Ark. 83, 971 S.W.2d 252, 254–55 (1998) (affirming summary judgment to attorney in legal malpractice case alleging attorney should have included buy-out provision when revising partnership agreement because attorney was hired only to clarify ownership of a life insurance policy and not to review entire agreement); *Jones v. Bresset,* 2000 WL 33116007, 47 Pa. D. & C. 4th 60, 73 (Pa.Com.Pl.2000) (finding attorney was entitled to summary judgment on legal malpractice complaint where plaintiff hired attorney for one specific purpose and attorney memorialized agreement in writing, limiting representation and disclaiming any obligation to provide additional advice). "[A]n attorney cannot be negligent for failing to do what there was no duty to undertake." 1 R. Mallen & J. Smith, Legal Malpractice § 8.2 (4th ed. 1996). As a matter of law, the Flatow Defendants had no duty to provide the services Ingalls claims they were negligent in failing to provide, and Ingalls's legal malpractice claim therefore fails. Moreover, even if we were to view the limitation provisions more expansively and conclude the Flatow Defendants' duty to Ingalls encompassed every aspect of the defamation claim, including IPL's cross-motion for summary judgment on that claim, Ingalls has again failed to point to any legal argument that should have been made or evidence that should have been designated in response to IPL's motion that would have resulted in a more favorable outcome. Accordingly, Ingalls has failed to raise an issue of fact as to whether any negligence on the

part of the Flatow Defendants was a proximate cause of his alleged damages. The trial court erred in denying the Flatow Defendants' motion for summary judgment.

### Conclusion

As to the legal malpractice alleged by Ingalls, the Flatow Defendants either had no duty due to the limited nature of their representation or Ingalls has failed to show an issue of fact as to proximate cause. The trial court erred in denying summary judgment to the Flatow Defendants. The judgment is reversed and this cause remanded for entry of summary judgment in favor of the Flatow Defendants.

Reversed and remanded.

FRIEDLANDER, J., concurs.

KIRSCH, J., concurs in result with separate opinion.

KIRSCH, Judge, concurring in result.

I take a more expansive view of the professional obligations that the Flatow Defendants owed their client regarding the defamation claim than my colleagues, but I agree with their ultimate conclusion that Ingalls has failed to show any legal argument that the Flatow Defendants should have made or evidence that they should have designated in response to the summary judgment motion. As a result, I concur in the result that my colleagues reach.

My colleagues conclude that the "Contract to Hire Attorney" between Ingalls and the Flatow Defendants limited the representation to "drafting a motion for

---

**3.** We note, as we did in footnote 1, supra, that as to his other two claims, Ingalls was either pro se or represented by other counsel. If he was acting pro se, IPL should have served him a copy of its cross-motion for summary judgment; if he was represented by Corcella and Huang, it is possible they should have acted upon the cross-motion.

summary judgment and a reply brief as to that matter." *Opinion*, p. 730. I do not believe the representation was so limited.

In the contract, the Flatow Defendants agreed to represent Ingalls "in his defamation claim against his former employer (AES) and/or employees of his former employer." *Appellants' Appendix*, p. 101. While they specifically agreed to "draft a motion for summary judgment and a reply brief" in the matter, the scope of their representation was not limited to such activities. *Id.* Indeed, they specifically agreed that their "representation in this matter includes inception of the matter through the end of trial." *Id.*

To me, the correct interpretation of the attorney contract was that although the Flatow Defendants limited their representation Ingalls to his defamation claim, they did not limit their representation of that defamation claim. To the contrary, they agreed to represent Ingalls on the defamation claim to "the end of trial." While my colleagues say that an attorney cannot be negligent for failing to do what there was no duty to do, I believe that the Flatow Defendants had the express duty to represent Ingalls on his defamation claim and to take all steps required by the applicable standard of care regarding the summary judgment proceedings and, thereafter, through to the end of trial.

That said and as previously noted, Ingalls fails to put before us any legal argument that should have been advanced or evidence that should have been designated in response to the summary judgment motion. Therefore, I concur in result.