NATIONAL WINE & SPIRITS, INC., National Wine & Spirits Corporation, NWS Michigan, Inc., and NWS, LLC., Appellants–Plaintiffs,

v.

ERNST & YOUNG, LLP, Appellee–Defendant.

No. 49A02–1012–CT–1289.

Court of Appeals of Indiana.

Sept. 15, 2011.

Todd J. Kaiser, John K. Henning, Ogletree Deakins Nash Smoak & Stewart P.C., Indianapolis, IN, Attorneys for Appellants.

Karl L. Mulvaney, Brian W. Welch, Phil L. Isenbarger, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Chief Judge.

### Case Summary and Issues

National Wine and Spirits [1] ("NWS") appeals the trial court's grant of Ernst & Young's ("E & Y") second motion for summary judgment. NWS raises one issue, which we expand and restate as three: whether E & Y's second summary judgment motion was improper; whether the trial court erred in granting E & Y's second motion for summary judgment; and, alternatively, whether res judicata bars NWS's deception claim. Concluding the successive motion was proper, but that there are genuine issues of material fact and res judicata does not bar NWS's claim, we reverse and remand.

### Facts and Procedural History

NWS hired E & Y in 1998 to perform auditing services for the fiscal years ending March 31 in 1998, 1999, 2000, and 2001. Pursuant to E & Y's audit engagement letter, the parties agreed to submit any controversy or claim arising out of E & Y's audit services to arbitration. During the years E & Y performed auditing services for NWS, an NWS employee in its accounts receivable department, Dianne Woodrum, committed fraud and theft causing losses to NWS of approximately $4.2 million. Claiming negligence, breach of contract, and unjust enrichment, NWS submitted a demand for arbitration to the American Arbitration Association. Preceding arbitration, E & Y produced approximately 40,000 pages of documents from its audits of NWS. One of these documents was a memorandum authored by E & Y auditor David Sems ("the Sems Memo"). The Sems Memo was written after the discovery of Woodrum's fraudulent activity, and in part it states: "There were several incidences where questions where [sic] raised and the audit team contacted Ms. Woodrum for answers and explanations. These ex-

---

1. The plaintiffs below consist of various corporate forms of National Wine and Spirits: National Wine & Spirits, Inc.; National Wine & Spirits Corporation; NWS, Inc.; NWS Michigan, Inc.; and NWS, LLC. We treat all forms of National Wine and Spirits as one and the same party for the purposes of this opinion.

planations are recorded in the audit work papers." Appendix to Appellants' Brief at 457.

In addition to the 40,000 pages of documents E & Y produced, just ten days before arbitration E & Y produced computer records called "cell notes" that the documents already produced did not contain. The cell notes included records written by someone at E & Y stating that E & Y had discussed the suspicious accounts receivable with NWS employees Matt Albrecht and Cindy Sullivan. At arbitration, E & Y used the cell notes as evidence to argue NWS was guilty of comparative fault. NWS presented evidence refuting the cell notes, namely the testimony of Albrecht and Sullivan that they never talked to anyone from E & Y and testimony from them, and other NWS employees, showing that some of the information in the cell notes was not accurate regarding NWS's business. The Arbitration Panel concluded E & Y did act negligently, but it attributed 40% of NWS's losses to its own negligence. E & Y therefore had to pay NWS for 60% of its losses, amounting to approximately $2.25 million.

In June of 2006, NWS filed an action against E & Y for fraud and deception[2] based upon E & Y's actions at arbitration, alleging:

20. The cell notes were either altered or offered to make it appear as though NWS was aware of the increasing aged accounts receivable and failed to act on the information. As a result, E & Y argued NWS was comparatively at fault.

21. E & Y's falsification of and use of the cell notes constitutes a deliberately planned and carefully executed scheme to defraud the arbitrators and to make it appear as though E & Y had properly brought the increase in accounts receivables to NWS's attention.

* * *

26. E & Y conducted a review of its work papers in June 2001, and at that time, "there were several incidences" where the audit team recorded Ms. Woodrum's explanations. However, by the time the arbitration occurred in June 2004 there was only one.

* * *

App. to Appellants' Brief at 860. E & Y then filed its first motion for summary judgment. The trial court granted the motion as to NWS's fraud claim, but denied it as to NWS's deception claim. Thereafter, E & Y filed a second motion for summary judgment regarding the deception claim. E & Y's argument did not change, but it had new evidence supporting its defense to the deception allegation: an expert's opinion that the cell notes were not changed or altered after their respective dates of creation.

NWS's evidence in support of its claim included the earlier testimony of Albrecht, Sullivan, and other NWS employees that the attributions to Albrecht and Sullivan were false and the information in the cell notes was not accurate. Also, NWS designated as evidence the Sems Memo and the lack of "several incidences" of E & Y discussing matters with Woodrum in the 40,000 pages of documents produced by E & Y. The trial court granted E & Y's motion for summary judgment regarding

**2.** NWS's deception claim arises out of Indiana Code sections 35–43–5–3, which provides for the elements of the crime of deception, and 34–24–3–1, which gives statutory authority for civil actions based upon crimes committed under article 35–43 and other sections of the Indiana Code. The deception defi- nition raised here is "[a] person who ... knowingly or intentionally makes a false or misleading written statement with intent to obtain property, employment, or an educational opportunity...." Ind.Code § 35–43–5–3(a)(2).

NWS's deception claim. NWS now appeals. Additional facts will be provided as necessary.

### Discussion and Decision

### I. Standard of Review

Summary judgment is appropriate only when the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Flatow v. Ingalls*, 932 N.E.2d 726, 729 (Ind.Ct. App.2010), *trans. denied*. We review the granting of motions for summary judgment de novo. *See Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269 (Ind.2009). We examine only those materials properly designated by the parties to the trial court. *Flatow*, 932 N.E.2d at 729. We construe all facts and reasonable inferences drawn from them in favor of the non-moving party, and resolve all doubts as to the existence of a material issue against the moving party. *Id.* The party appealing the trial court's summary judgment decision has the burden of persuading us that the decision was erroneous. *Id.*

### II. Successive Summary Judgment Motions

 Before arguing the merits of E & Y's motion for summary judgment, NWS argues E & Y's successive motion for summary judgment was improper. NWS states that "E & Y made the identical arguments and offered the same evidence" as in its first motion for summary judgment, relying on *Rotec, Div. of Orbitron, Inc. v. Murray Equip., Inc.*, 626 N.E.2d 537, 538 (Ind.Ct.App.1993) for the proposition that such action in a successive motion for summary judgment is improper. Brief of Appellants at 16. We need not address whether this is a correct interpretation of *Rotec*, because NWS's characterization of E & Y's second summary judgment motion is factually inaccurate. In support of its second motion for summary judgment, E & Y produced an affidavit of Eric Lakes, a computer expert, stating he determined the documents containing cell notes at issue in the case "had not been altered, modified or changed in any way from their last modified dates in June, 1999, and June, 2000, respectively and/or after they were archived in December, 2000." App. to Appellants' Brief at 651. Mr. Lakes' expert opinion was not in any way produced in conjunction with E & Y's first motion. E & Y's successive motion was proper.

### III. The Merits of E & Y's Motion for Summary Judgment

 NWS next argues E & Y's second motion for summary judgment should not have been granted because genuine issues of material fact still exist. E & Y responds that no genuine issues of material fact exist, but even if a question of fact does exist, res judicata and/or collateral estoppel prevent NWS from asserting its deception claim. NWS only asserts one claim of deception, but it proposes three different factual scenarios in support of its claim. First, E & Y may have altered the cell notes once litigation began to make it appear that E & Y auditors did not act negligently. Second, rather than altering the cell notes after the fact, E & Y auditors may have entered false information initially that would incorrectly cause a finder of fact to determine E & Y acted properly, and E & Y intentionally produced the false cell notes in the arbitration proceedings. Third, the Sems Memo demonstrates E & Y acted deceptively because it refers to multiple interactions between E & Y auditors and Ms. Woodrum and

states they are recorded in the audit work papers, but the audit work papers produced by E & Y only contain one such reference. This gives rise to their third theory, that E & Y scrubbed the work papers of incriminating documents and intentionally produced them in this misleading form during the arbitration proceedings. The common thread to these three factual alternatives is that NWS contends E & Y knowingly or intentionally produced the cell notes and/or work papers in order to obtain property from NWS.

NWS argues the trial court erred in determining that no questions of material fact exist regarding its claim against E & Y for deception because E & Y did not do anything to refute, and the trial court did not acknowledge, NWS's two alternative factual allegations.[3] We agree. The arguments made by E & Y in its motion for summary judgment revolve around whether or not E & Y altered the cell notes after they were produced and in anticipation of litigation to deceive both NWS and the arbitration panel. The arguments made and evidence designated by E & Y did not address the other two factual scenarios NWS argues may have occurred, and therefore E & Y did not demonstrate that no genuine issues of material fact exist.

Despite this, E & Y argues NWS's two alternative theories of deception cannot withstand summary judgment, essentially arguing that even if everything NWS alleges is true, neither theory gives rise to a claim of deception. As to the theory that E & Y auditors originally entered information in the cell notes incorrectly and E & Y then deceptively used this evidence at arbitration to obtain property from NWS, E & Y argues that since the auditors' actions occurred during the course of the parties' contractual relationship, this claim would be covered by their arbitration clause and required to be submitted to arbitration. This is a misstatement of NWS's second theory of deception. NWS claims in this theory that deception occurred at arbitration when E & Y produced the evidence and used it to refute its negligence, not at the time E & Y auditors created the cell notes. This theory does not arise out of or relate to the services E & Y provided.

Also, as to the theory that the cell notes were originally incorrect and the theory that E & Y "scrubbed" the 40,000 pages it turned over to NWS to eliminate incriminating documents, E & Y argues these theories do not constitute "knowingly or intentionally [making] a false or misleading written statement with intent to obtain property...." *See* Ind.Code § 35–43–5–3(a) (providing for the cause of action of deception). E & Y contends that, in regard to the theory that originally incorrect cell notes were produced, the mens rea element of the statute is absent because at the time the notes were created litigation had not yet commenced and thus they could not have intended to "obtain property" from NWS. E & Y also contends that producing false evidence in litigation does not give rise to a deception claim.

At this stage, we are faced with the question of whether either of NWS's two alternative theories, if assumed true, would create a cause of action for deception pursuant to the statute. We conclude that both theories could meet the definition of deception. Regarding E & Y's mens rea argument, NWS does not contend that the necessary mens rea existed at the time the cell notes were created. Rather, NWS argues each element of deception took place during the arbitration proceedings. The deception argument is not that E & Y

---

**3.** NWS does not refute E & Y properly demonstrated to the trial court that no genuine issue of material fact exists regarding NWS's first factual theory of deception. Thus, we need not address this issue.

intentionally created false cell notes, it is that E & Y knowingly or intentionally produced false or misleading written evidence during arbitration to lessen its pecuniary liability.

Further, we conclude that producing false or misleading evidence during arbitration constitutes "mak[ing] a false or misleading written statement." Indiana Code section 35–43–5–1(m) provides a definition for "make" and is applicable to the section creating the deception cause of action. It provides: " 'Make' means to draw, prepare, complete, counterfeit, copy or otherwise reproduce, or alter any written instrument in whole or in part." Production of evidence in litigation constitutes preparing or reproducing a written statement. Thus, questions of material fact still exist as to whether E & Y knowingly or intentionally made a false or misleading statement with the intent to obtain property from NWS.

## IV. Res Judicata

■ E & Y argues that regardless of whether questions of material fact exist, it is entitled to summary judgment because res judicata applies, barring NWS's deception claim. In *Dawson v. Estate of Ott*, we stated:

> The doctrine of res judicata consists of two distinct components, claim preclusion and issue preclusion. Claim preclusion is applicable when a final judgment on the merits has been rendered and acts to bar a subsequent action on the same claim between the same parties. When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. Claim preclusion applies when the following four factors are present: (1) the former judgment was rendered by a court of competent jurisdiction; (2) the former judgment was rendered on the merits; (3) the matter now at issue was,

> or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action was between parties to the present suit or their privies.

796 N.E.2d 1190, 1195 (Ind.Ct.App.2003) (citations omitted). E & Y argues both claim and issue preclusion apply to NWS's deception cause of action. Beginning with claim preclusion and jumping to the determinative factor, there was no final judgment on the merits as to NWS's deception claim. E & Y may be correct that at arbitration both parties thoroughly argued as to the veracity of the evidence at issue here, but their arguments addressed how the arbitration panel should weigh the evidence in its determination of the respective negligence of the parties, not whether E & Y committed deception in the production of its evidence. Indeed, the findings of fact and conclusions of law of the arbitration panel do not even discuss the evidence at issue on which NWS now bases its deception claim. NWS's deception claim was not conclusively decided by the arbitration panel, and, thus, claim preclusion does not bar NWS's deception claim.

■ Issue preclusion, also termed collateral estoppel, "bars subsequent litigation of the same fact or issue that was necessarily adjudicated in a former suit." *Miller Brewing Co. v. Indiana Dep't of State Revenue*, 903 N.E.2d 64, 68 (Ind. 2009). "Issue preclusion applies only to matters actually litigated and decided, not all matters that could have been decided." *Id.* Here, NWS's claim of deception was not "necessarily adjudicated" at arbitration. As discussed above, at arbitration arguments were made regarding the evidence now at issue on appeal, but those arguments were made to the panel to assist in determining what the evidence showed regarding relative negligence liability, not whether E & Y committed de-

ception in its production of evidence at arbitration. E & Y is correct that the panel determined the issue of comparative fault, but that is not the same issue relevant here. Thus, collateral estoppel does not bar litigation of NWS's deception claim.

### Conclusion

We conclude genuine issues of material fact still exist regarding NWS's deception claim and E & Y is not entitled to summary judgment as a matter of law. The judgment is reversed and this cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BARNES, J., and BRADFORD, J., concur.